CHARLES M. PRESTON, as Assignee, etc., Appellant, *v.* REED FITCH, as Sole Surviving Executor, etc., et al., Respondents.

Although a surviving partner takes the legal title to the partnership assets they come to him impressed with a species of trust, founded upon his duty to realize upon them and pay therefrom the firm debts and pay over the share of any balance, due to the estate of the deceased partner, to the representatives thereof.

S. and W. were partners; the firm had loaned money to M. which was secured by mortgages on premises upon which was a prior mortgage. Pending an action to foreclose the firm mortgages, the partners entered into an agreement to dissolve the partnership, they "to continue to hold as tenants in common the debt" of M., each to have and own an undivided half interest therein. All "other" bonds, mortgages, debts and partnership property to belong to W., who assumed and agreed to pay the firm debts, and to hold S. "harmless and free from any liability on account" of the partnership. S. soon after died; the foreclosure suit was continued in the name of W. as survivor. The action was defended and W. paid the costs of the litigation, without any request on the part of any representative of the deceased partner. A judgment of foreclosure was obtained, the premises sold and bid off by W. who took title in his own name. W. subsequently executed an assignment to plaintiff for

the benefit of creditors; said premises were included in the property assigned. The prior mortgage was thereafter foreclosed and on fore-closure sale the premises were purchased by plaintiff as such assignee, and then sold by him for $2,500 more than the purchase price. In an action against the executor of S., among other things to recover one-half the expenses paid by W. in the first foreclosure suit, *held*, that under the dissolution agreement the parties remained substantially partners as to the M. debt, that although the words "tenants in common" were used, the plain meaning of the instrument was that they were to continue to hold this firm property as they had been holding it; that as to it therefore W., upon the death of S., was clothed with all the rights of a surviving partner, and had the right to incur proper, necessary and reasonable expenses in attempting to collect the debt, and to charge the estate of his deceased partner with one-half thereof.

Also *held*, that the agreement on the part of W. to assume and pay all partnership debts and to hold S. "harmless and free from any liability on account" of the partnership, did not include the disbursements or expenses so made or incurred.

W. also made payments of interest on the prior mortgages; as to all such payments as well as to payments for expenses made more than six years before the commencement of the action, defendant pleaded the Statute of Limitations. *Held*, that the defense was not sustainable; that a cause of action for contribution did not immediately arise upon pay-ment of any item of disbursement, whether for expenses or interest, and the statute did not begin to run until, upon termination of the liti-gation and sale of the premises, it could be determined whether the moneys realized would be sufficient to reimburse plaintiff for the advances made.

Also *held*, that defendants were entitled to credit in the account for the difference between the sum paid by plaintiff on the foreclosure sale, and the price received by him for the premises; that when he purchased the property at the sale under the judgment of foreclosure of the firm mortgages, he took and held it as representing the debt secured, and it became his duty so to treat it; that plaintiff as his assignee had no better or other right, and when he bid in the property under the judgment on foreclosure of the prior mortgage, he took it with this burden or obliga-tion of the survivor impressed upon it, and when he sold at an advance the estate of the deceased partner was entitled to its proportionate share.

*It seems* the single fact that disbursements were made by a surviving partner in attempting to collect a partnership debt, is not conclusive upon the question of the liability of the estate of a deceased partner to contribute; the disbursement must be reasonable in amount, made in good faith, and for a purpose fairly appropriate to the recovery of the debt.

(Argued December 21, 1892; decided January 17, 1893.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made July 2, 1892, which affirmed a judgment in favor of defendant entered upon a decision of the court on trial at Circuit without a jury.

The plaintiff is the general assignee for the benefit of creditors of one William B. Fitch, and the defendant Reed Fitch is the surviving executor of Simeon Fitch, deceased. The assignor of the plaintiff, together with the said Simeon Fitch were at one time partners under the firm name of S. & B. Fitch, as wholesale dealers in blue stone, in the cities of Kingston and New York. They had from time to time loaned to Mrs. Margaret Fitch partnership moneys which in August, 1877, amounted to the sum of about $25,000. This indebtedness of Mrs. Fitch was a partnership asset. Mrs. Fitch was the owner of a farm at Coxsackie in Greene county, upon which there was a first mortgage of $10,000, executed by her and her husband, Ezra Fitch, to the Mutual Life Insurance Co. of New York, in May, 1859. Subsequent to the execution of that mortgage and some time in 1874, Mrs. Fitch conveyed the farm in question to one Best, subject to the mortgage, which Best assumed and agreed to pay. He also executed and delivered to Mrs. Fitch as part security for the payment of the purchase money of the farm, two other mortgages upon the same farm, one for $15,000 and the other for $40,000.

In August, 1874, Mrs. Fitch, in order to partly pay her indebtedness to the Fitch firm, assigned to the members thereof as copartners the mortgage for $15,000, and she also at the same time assigned the $40,000 mortgage as a security for the remainder of her indebtedness over the amount of $15,000, which balance at that time amounted to nearly $7,000. Thereafter Best became insolvent and failed to pay the interest on the various mortgages, and in April, 1877, the members of the Fitch firm commenced an action to foreclose the mortgages executed by Best to Mrs. Fitch and assigned by her to them. This action was pending on the 25th of August, 1877, when Simeon and William B. Fitch entered into an agreement

in writing, which, after reciting the existence of a partnership between them up to that time, and that as such partners they owned and possessed various chattels and had claims, demands, debts and judgments belonging to them in that way, continued in these words:

"Now this agreement witnesseth, that the said parties hereto of the first and second parts hereby mutually agree to discontinue said copartnership existing between them as aforesaid from the time of the execution of these presents; and the said parties hereto of the first and second parts hereby mutually agree to continue to hold as tenants in common the debt, claims or demand, *amounting to about the sum of twenty-five thousand dollars,* known as the Ezra Fitch debt, secured by mortgages and liens on lands known as the Ezra Fitch property at Coxsackie, Greene county, New York, each of the parties hereto to have and own an undivided one-half interest therein; and the said parties hereto of the first and second parts further mutually agree that all other bonds, mortgages, judgments, debts, outstanding accounts, stock in trade, vessels, teams, tools and chattels, partnership property, shall be the several property of William B. Fitch, the party hereto of the second part; and the said parties hereto of the first and second parts further mutually agree that all liabilities, indebtedness and obligation under which said copartnership rest or owing by them shall be assumed by and fully paid, liquidated and discharged by William B. Fitch, the party hereto of the second part; and the said Simeon Fitch, party hereto of the first part, hereby assigns, transfers, and sets over unto said William B. Fitch, party hereto of the second part, all interest of him, said party of the first part, of, in and to all bonds, mortgages, debts, outstanding accounts, stock in trade, vessels, teams and chattels which may be or are partnership property (excepting the Ezra Fitch debt);" the agreement concluding with a covenant on the part of William B. to pay and discharge "all liabilities, indebtedness or obligations of the aforesaid copartnership and will hold the said party of the first part harmless and free from any liability on account thereof

as one of the members of the copartnership of S. & W. B. Fitch."

Soon after the execution of this agreement and on the 3d day of September, 1877, Simeon Fitch died, and at his death the action of Simeon and William Fitch against the above-mentioned Best for the foreclosure of the two mortgages, was still pending. This action was continued in the name of William B. Fitch as survivor of the partnership, and neither the widow, children, heirs at law, devisees or executors of Simeon Fitch, deceased, were brought into the action to foreclose the mortgages or made parties thereto and were not represented therein except by William B. Fitch as such surviving partner. Whatever moneys were paid out in the course of this foreclosure action by William B., were so paid without any request on the part of any representatives of the deceased partner. The foreclosure action was defended but unsuccessfully, and finally the mortgaged premises were sold under the decree in foreclosure on the 7th day of February, 1884, and purchased by William B., who took the title in his own name and without any request or authorization from the representatives or heirs of the deceased partner. William continued to hold the premises thus bid in until the 15th of November, 1884, when he executed the general assignment already mentioned, to the plaintiff, and part of the property thus assigned was this real estate bid in by William at the foreclosure sale.

Subsequently the Mutual Life Insurance Company commenced an action to foreclose its mortgage on the premises and under a decree of foreclosure therein the premises were sold in February, 1886, and purchased by the plaintiff as the assignee for the benefit of the creditors of William B. Fitch for the sum of $12,500, and subsequently, but before the commencement of this action he sold the same for $15,000, and turned over the difference to the creditors of William B., but no portion was turned over to the defendants, nor was any credit given them for that difference. The mortgagor Best appealed from the judgment of foreclosure against him, but the

judgment was affirmed by the General Term and by this court. In taking the appeals Best gave the requisite undertakings and this plaintiff recovered from the sureties therein the sum of $7,000, less counsel fees, and plaintiff has received some other moneys as issues and profits of the real property bid in by him as stated. The defendants here made no claim against plaintiffs for or on account of any moneys received by him and they have received no benefit for or on account of any of the matters involved in this action, and plaintiff prior to this action never made any demand upon these defendants for the payment of the moneys involved herein.

During the time subsequent to the death of Simeon, various moneys were disbursed by William B. in the course of the prosecution of the foreclosure proceedings and moneys were received by him or his assignee, and the plaintiff as such assignee commenced this action against the defendant as sole surviving executor of the will of Simeon Fitch, deceased, and the widow and heirs at law of said Simeon, for an accounting and for a decree for contribution by defendants for one-half the disbursements made by plaintiff's assignor or himself in regard to the Best mortgages and the foreclosure thereof. The defendants duly answered and upon the trial the foregoing facts were found by the trial judge, who thereupon dismissed the complaint upon the merits, and from the judgment of dismissal affirmed at General Term, the plaintiff has appealed to this court.

*Howard Chipp, Jr.*, for appellant. The learned trial court substantially followed the plaintiff's theory of the case both as to law and the facts, but held that the obstacle in the way of plaintiff's recovery was the assumption and indemnity clauses in the agreement of dissolution. This construction of the agreement was erroneous. (*Blossom* v. *Griffin*, 13 N. Y. 569; *Colt* v. *P. Ins. Co.*, 54 id. 595.) The learned justice delivering the opinion at General Term gave an exceedingly narrow construction of that portion of the agreement to dissolve the partnership, upon which his reasoning rests, and one

that ignored the language of the agreement as a whole, as well as the situation of the parties at the time of its execution. (*Ward* v. *Whitney*, 8 N. Y. 446; *Coleman* v. *Beach*, 97 id. 545.) If our construction of the agreement be correct, then, of course, on the death of Simeon the title devolved upon William B. as surviving partner, and he was authorized to prosecute the claims and endeavor to collect them so as to settle the partnership affairs. (Code, § 758; *Williams* v. *Whedon*, 109 N. Y. 333; *Denton* v. *Noyes*, 6 Johns. 296; *Brown* v. *Nichols*, 42 N. Y. 6; *Hamilton* v. *Wright*, 37 id. 502; 2 Black on Judgments, §§ 534, 549; 1 Greenl. on Ev. [12th ed.] §§ 189, 523; *Tuska* v. *O'Brien*, 63 N. Y. 449; *Vilas* v. *P., etc., Co.*, 123 id. 440.) In whatever capacity William B. Fitch prosecuted the foreclosure suit he was authorized to and it was his duty to pay the expenses of the suit, to keep the property insured in the meantime and keep down the interest on the prior mortgage, to the end that the liens which he was enforcing might be preserved and the claims realized out of the property. (*Hess* v. *Rau*, 95 N. Y. 359; *Wilcox* v. *Pratt*, 125 id. 688; *King* v. *Barnes*, 109 id. 267; *Ford* v. *Knapp*, 102 id. 135.) The estate of Simeon is liable for one-half the expenses incurred; as it would have shared the benefits, so it must share the burdens and contribute its proportion to the expenses, and this is so even when no contract so to do exists. (*Campbell* v. *Meiser*, 4 Johns. Ch. 334; *Musgrave* v. *Buckley*, 114 N. Y. 506; *Dillenbeck* v. *Dygert*, 97 id. 303; *Wells* v. *Miller*, 66 id. 258.) It was the duty of William B. Fitch in the absence of bidders to a reasonable amount to protect the claim by bidding in the property on the foreclosure sale. (*Clark* v. *Clark*, 8 Paige, 152; *Van Horne* v. *Fonda*, 5 Johns. Ch. 407; *Graham* v. *Ludington*, 19 Hun, 251; *Carpenter* v. *Carpenter*, 131 N. Y. 101–109; *Hoyt* v. *Tuthill*, 33 Hun, 199.) The plaintiff is entitled to recover interest on the advances made by William B. Fitch and himself. (*Collender* v. *Phelan*, 79 N. Y. 366; *Dougherty* v. *Van Nostrand*, Hoff, 68, 69; *Gillett* v. *Van Rensselaer*, 15 N. Y. 399.) In no aspect of the case can the Statute of Limitations

be applied to plaintiff's cause of action. (*Eno* v. *Diefendorf*, 102 N. Y. 720; *Gridley* v. *Dole*, 4 id. 486; *Gray* v. *Green*, 125 id. 203; *Williams* v. *Whedon*, 109 id. 333; *Wilcox* v. *Pratt*, 125 id. 688; Code Civ. Pro. § 401; *Dinny* v. *Smith*, 18 N. Y. 567.) The defendants not having taken the point that defendants other than Reed Fitch as executor were not proper parties to the action, have waived it. ,(Code, § 499; *Ostrander* v. *Weber*, 114 N. Y. 96; *Bank* v. *Scott*, 81 Hun, 301; *Hier* v. *Staples*, 51 N. Y. 136.)

*A. T. Clearwater* for respondents. The claim of the plaintiff that notwithstanding the covenants of the article of dissolution the partnership continued, is incorrect and untenable. The authority of partners to bind each other by any undertaking, action or admission, even though it relates to partnership transactions, ceases with the termination of the partnership. (*Hackley* v. *Patrick*, 3 Johns. 528; *Halstead* v. *Schuelzel*, 17 id. 80.) The copartnership having ceased, and the representatives of Simeon never having requested William B. to make these expenditures, his estate cannot be called upon for contribution. (*Mumford* v. *Brown*, 6 Cow. 475; *Doan* v. *Badger*, 12 Mass. 70; *Putnam* v. *Ritchie*, 6 Paige, 405; Story's Eq. Juris. §§ 655–1234; *Calvert* v. *Aldrich*, 99 Mass. 74; *Curling* v. *Robertson*, 7 M. & G. 336; *Brodie* v. *Howard*, 17 C. B. 109; *Hardy* v. *Sproule*, 31 Me. 71; *Pentz* v. *Clark*, 41 Md. 327; *Steadman* v. *Feidler*, 20 N. Y. 437; *Taylor* v. *Baldwin*, 10 Barb. 582; *Loring* v. *Bacon*, 4 Mass. 575; *Converse* v. *Fern*, 11 id. 325; *Rigden* v. *Vallier*, 2 Ves. 258; *Goell* v. *Morse*, 126 Mass. 480; *Brady* v. *Calhoun*, 1 Penn. 140; *Coope* v. *Eyre*, 1 H. Blacks. 37; *Hoare* v. *Dawes*, 1 Doug. 371; *Gibson* v. *Lupton*, 9 Bing. 297.) The payments by William B. were voluntary, without request, and cannot be recovered by the plaintiff. (*Taylor* v. *Baldwin*, 10 Barb. 626; *Suprs., etc.,* v. *Briggs*, 2 Denio, 26; *Trippler* v. *Mayor, etc.,* 125 N. Y. 617; Chitty on Contracts, 62, 63.) $7,326.60 of the plaintiff's claim is barred by the Statute of Limitations. (*Wood* v. *Riker*, 1 Paige, 616; *Bell* v. *Morrison*, 1

Pet. [U. S.] 360 ; *United States* v. *Wiley*, 11 Wall. 508, 513 ; *Spring* v. *Gray*, 5 Mass. 523 ; *Philip* v. *Pope*, 10 B. Mon. 163 ; *McCarthy* v. *White*, 21 Cal. 495 ; *Dickenson* v. *McCamy*, 5 Ga. 486 ; *McClung* v. *Silliman*, 3 Pet. [U. S.] 270 ; *Gautier* v. *Franklin*, 1 Tex. 732 ; *Gorman* v. *Judge of Newaggo Circuit*, 27 Mich. 138 ; *Roberts* v. *Pillow*, Hempst. 624 ; *U. S.* v. *Wilder*, 13 Wall. 251 ; *Billings* v. *Hall*, 7 Cal. 1 ; *Weed* v. *Bishop*, 7 Conn. 128 ; *Gospel Society* v. *Wheeler*, 2 Gall. 105 ; *Teackle* v. *Gibson*, 8 Md. 70 ; *Croker* v. *Clemen*, 23 Al. 296 ; *Platt* v. *Northam*, 5 Mass. 95 ; *Bailey* v. *Carter*, 7 Ired. [N. C.] Eq. 282 ; *Hovend* v. *Lord Anesley*, 2 S. & L. 607, 629 ; *Wilhelm* v. *Caylor*, 32 Md. 151 ; *Ayer* v. *Stuart*, 14 Minn. 97 ; *Dodge* v. *E. Ins. Co.*, 12 Gray, 65 ; *Longworth* v. *Hunt*, 11 Ohio, 194–201 ; *Harris* v. *Saunders*, 4 B. & C. 411 ; *Beatty* v. *Burns*, 8 Cranch, 98 ; *Chiveley* v. *Bond*, 4 Md. 105 ; *Haven* v. *Foster*, 9 Pic. 112 ; *Williams* v. *Williams*, 5 Ohio, 105 ; *Harcourt* v. *White*, 28 Beav. 303 ; *McDonald* v. *White*, 11 H. L. Cas. 750 ; *Hunt* v. *Ellison*, 32 Al. 173 ; *Hamlin* v. *Mebane*, 1 Jones [N. C.] Eq. 18 ; *Wilson* v. *Anthony*, 19 Ark. 16 ; *Askew* v. *Hooper*, 28 Ala. 634 ; *Palmer* v. *Malone*, 1 Heisk. Tenn. 549 ; *New Albany* v. *Burke*, 11 Wall. 96 ; *Badger* v. *Badger*, 2 Clif. C. C. 137 ; *Mobley* v. *Cureton*, 2 S. C. 140 ; *Hallock* v. *Losee*, 1 Sand. 220 ; *Ross* v. *Ross*, 6 Hun, 80 ; *Turbell* v. *Strohecker*, 4 Md. S. C. 210 ; *Traylor* v. *S., etc., Co.*, 17 Cal. 594 ; *Guilic* v. *P., etc., T. Co.*, 14 N. J. L. 545 ; *Fox* v. *Fisk*, 7 Miss. 346 ; *Chipman* v. *Bates*, 5 Vt. 143 ; 2 Greenl. on Ev. § 431 ; *Taylor* v. *Spears*, 6 Ark. 381 ; *Baldwin* v. *Martin*, 14 Abb. [N. S.] 9, 35 ; *Graham* v. *Schmidt*, 1 Sand. 74.) An action at law will furnish an adequate remedy. Equity does not assume jurisdiction because an accounting or contribution is demanded or needed. (Pom. Eq. Juris. § 178 ; *Jewett* v. *Bowen*, 29 N. J. Eq. 174 ; *Badger* v. *McNamara*, 123 Mass. 117 ; *Fure* v. *Loring*, 120 id. 507 ; *Ward* v. *Peck*, 114 id. 121 ; *Long* v. *Cochran*, 9 Phila. 267 ; *N., etc., R. R. Co.* v. *Storey*, 17 Conn. 364–370.) Viewed as a bill in equity for an accounting or for contribution, the plaintiff's complaint

cannot be sustained. (*Marvin* v. *Brooks*, 94 N. Y. 75; 3 Greenl. on Ev. § 253; 1 Story's Eq. Juris. §§ 315, 316; *Jewett* v. *Bowen*, 29 N. J. Eq. 174; *Badger* v. *McNamara*, 123 Mass. 117; *Bailey* v. *Taylor*, 1 R. & M. 73; Pom. Eq. Juris. 178; *Salter* v. *Hand*, 31 N. Y. 321; *Seymour* v. *L. D. Co.*, 20 N. J. Eq. 396; *Lynch* v. *Willard*, 6 Johns. Ch. 342; *Dinwiddie* v. *Bailey*, 6 Ves. 136.) The plaintiff must fail in any event for the reason that the action cannot be maintained because of the provisions of article 2 of title 3 of chapter 15 of the Code of Civil Procedure, sections 1837 to 1860 inclusive. (Code Civ. Pro. §§ 1841, 1848.)

Peckham, J. The first question in this case arises out of the written agreement set forth in the foregoing statement. What is the proper meaning of the clause therein contained, providing that the parties to it thereby "mutually agree to continue to hold as tenants in common the debt, claim or demand, amounting to about the sum of twenty-five thousand dollars, known as the Ezra Fitch debt, secured by mortgages and liens on lands known as the Ezra Fitch property at Coxsackie, Greene county, New York, each of the parties hereto to have and own an undivided one-half interest therein."

The defendants contend that a strict and literal meaning shall be given to the expression "tenants in common," so that the holding of the debt due from Mrs. Fitch shall cease as a partnership holding and remain from that time strictly in the character of a holding as tenants in common, wholly disconnected from any partnership attributes. In the event that the latter is the correct view, the defendants then claim that as they never had any notice or knowledge of the payments spoken of and as they were made entirely on the volition of the plaintiff's assignor, they were not of such a character that the defendants would be liable to contribution in the character of tenants in common with William B. Fitch. I think, however, the parties remained substantially partners as to this Ezra Fitch debt. These individuals had been partners and a dissolution was by the agreement provided for as to all matters of a part-

nership nature, excepting the debt in question. As to that debt I think the plain meaning is that they were to continue to hold the property as they had been holding it. They described such holding as a tenancy in common when in law it was a holding as partners. They would not be apt to use the words "continue to hold" if they had intended to change the character of such holding. In that event they would have said "mutually agree to thereafter hold," or "mutually agree to hold," as tenants in common. By leaving out the words "to continue," they would more nearly have expressed a meaning to change the character of their holding, while by placing those words in their agreement they designate, as it seems to me, the character of the holding which they suppose they have had in that debt, and they provide that it shall continue. They describe it as a tenancy in common, when in legal strictness they have been holding as partners, but the distinction is not very important when describing the holding of property by partners as between themselves, for equity so regards the holding while at the same time admitting the right of survivorship to be in the surviving partner. (*Knox* v. *Gye*, L. R. 5 E. & I. App. 656, 678, 679.) This equitable doctrine is stated in the opinion of the Lord Chancellor in the above case, although upon other matters it is a dissenting opinion. Looking upon this whole instrument, we feel clear it was not intended to change the possession from that of partnership to a strict tenancy in common. The parties were intent upon retaining their partnership rights in this debt. In the same instrument the parties speak of "other" bonds, mortgages and partnership property after referring to the debt, claims or demand in question, and thus indirectly designate this debt as partnership property. It was indisputably partnership property, and there was seemingly no occasion to alter the nature of the title by which both held it, the very purpose of excepting the debt from the effect of the dissolution as to all other property being to maintain and "continue" the debt as a partnership holding, and each was to have and own an undivided half

interest therein.　And Simeon, after so excepting this debt, transfers and assigns to William B. all bonds, mortgages, debts, etc., " which may be or are partnership property, excepting the Ezra Fitch debt."　The parties, by their agreement, make it plainly appear, as it seems to us, that the partnership is dissolved and the partnership property is transferred to William, except this debt from Mrs. Fitch, and as to that debt, the parties remain as they were, partners, each with a half interest therein, and thus they are " to continue " to hold the property.

A mistaken designation of the strictly legal character of the holding, a continuance of which is provided for, is immaterial.　It is a correct statement of the way in which equity regards the holding. The continuation of the holding was the important matter while the possible slight error in the legal characterization of what it had been is unimportant.　Being of the opinion that Simeon and William B. remained partners in substance as to the Ezra Fitch debt, it would follow that upon the death of Simeon, William B. was clothed with all the rights of a surviving partner.　As such surviving partner he would have the same right to collect this one remaining partnership claim that any surviving partner has to collect the ordinary claims of a partnership with a view to the due and orderly winding up of the affairs of the partnership.

This would include the right to incur such proper, necessary and reasonable expenses connected with the administration of the partnership estate as might be called for in the course of the winding up thereof.

The defendants meet this view of the case by again appeal, ing to the agreement already cited and to that provision thereof in which the parties " mutually agree that all liabilities, indebtedness and obligations under which said copartnership rest or owing by them shall be assumed by and fully paid, liquidated and discharged by William ; " and William agrees to hold Simeon " harmless and free from any liability on account " of the partnership.

I think the language here used does not include disbursements or expenses made or incurred by the surviving partner in the

course of a proper effort to enforce the collection and payment of the Ezra Fitch debt. They would not be regarded as liabilities of the firm which rested upon or were owing by it within the natural meaning of this provision, but rather as claims made by a surviving partner upon the estate of the other to contribute its proportion toward the necessary expense of collecting a debt as to which the individuals continued partners up to the death of Simeon. William was to take all other property of the partnership and to pay all the debts and liabilities thereof, but as to that property which was to remain partnership property notwithstanding the dissolution of the partnership, it would seem natural that the expense of collecting it or reducing it to possession should be borne by the two owners of it in the proportion of their interest in the property.

These outlays are in the nature of expenses incurred by a surviving partner as incident to the saving and caring for the partnership property, and they cannot be correctly described as partnership liabilities. And then, too, they were incurred by the surviving partner subsequent to the execution of the agreement, and were never firm liabilities or obligations. They would be very badly described as an obligation or liability of the partnership, and would not be included therein by any language contained in the agreement in question.

The defendants also set up as a defense to a portion of the plaintiff's claim the six years Statute of Limitations. This action was commenced on the 22d of December, 1887, and all payments made by the assignor of the plaintiff prior to the item of May 13, 1882, are, as defendants urge, within the bar of the statute.

We are not of that opinion. In an action at law to recover from a co-surety the amount due from him as a contribution to the sum originally paid by the plaintiff in full discharge of the debt of their common principal, it may well be that a cause of action arises to recover from the co-surety whenever the surety has paid a sum which is more than his proportion of the common liability. Such was the case of *Davies* v. *Humphreys* (6 M. & W. 153, 167).

And when the surety pays the whole of the principal's debt the right to exact contribution from his co-surety at once attaches. As was said in above case, it would tend to great inconvenience if each surety might sue all the others for a ratable proportion of what he had paid the instant he had paid any part of the debt. But (says PARKE, B.) "whenever it appears that one has paid more than his proportion of what the sureties can ever be called upon to pay, then and not till then it is also clear that such part ought to be repaid by the others, and the action will lie for it."

The cases cited by counsel for defendants are all of the nature of an action to enforce contribution by a co-surety for sums actually paid by a surety to a greater amount than his proportion called for. This is not such a case.

The surviving partner had in his hands certain securities for the payment of the debt due the partnership. They were mortgages upon certain real estate. There was a prior mortgage upon the same real estate, the interest on which must be paid or it would be foreclosed, the real estate sold and the security for the payment of the partnership debt would thereby be lost. In order, as it is claimed, to save the real estate upon which the Best mortgages were second liens, the items of interest on the prior mortgage were paid by the surviving partner, not in the character of a surety for a principal debtor, but rather in that of a part owner of property who incurs expenses which were necessary and reasonable in order to preserve such property. As to the expenses of foreclosing the mortgages it is plain that they partake of the same character, as they were incurred in the effort to preserve, or in other words to obtain payment of the partnership debt or some portion thereof. Whether any contribution directly from defendants would ever be necessary, could not be told at least until the termination of the foreclosure by the sale thereunder. In making those proper disbursements in the course of a foreclosure suit that are called for by the exigencies of the litigation, a cause of action for contribution does not at once arise against the estate of the deceased partner for the immediate

repayment of a proportionate amount of each disbursement thus made. Nor does such cause of action arise at the moment of each payment of interest on the prior mortgage. Both the interest on the prior mortgage and the costs and expenses of the foreclosure of the Best mortgages were nothing but the general cost incurred by the surviving partner in the course of his attempt to collect the Ezra Fitch debt due the partnership estate and were necessary, as it is claimed, to pro- tect the real estate from being sold under the prior mortgage. At the termination of the litigation over these mortgages and upon the sale of the real estate, the true condition of the affairs between the parties could be arrived at, and for the first time it could be determined whether the moneys realized from the mortgages and other sources would be sufficient to reimburse the plaintiff for the advances made in the effort to recover payment of the debt due the partnership. Within six years of that time this action was commenced. Precisely what items of the demands proved in the action as made by plain- tiff or his assignor, whether all, or if not, what part of them should be allowed, we do not now intend to decide. The single fact that disbursements were made in the course of an attempt to collect a partnership debt by a surviving partner, would not be conclusive upon the question of the liability of the estate of a deceased partner to contribute. And yet the estate of a deceased partner is liable to contribution in some cases (*Allen* v. *Blanchard*, 9 Cow. 631, 632). The disburse- ment must be a reasonable one in amount, made in good faith and for a purpose which can be seen to have been fairly appropriate in carrying out the end sought, which is the recovery of the debt. A continued payment for example of interest on a prior mortgage after it was apparent that the land was not worth more than the prior mortgage, could not be allowed. It is difficult to formulate any general rules on the subject further than we have already intimated, and we must leave the decision as to each item after all the evidence is in regarding it, to the trial court in the first instance.

The question of interest as raised by the plaintiff under the

case cited by him (*Johnson* v. *Hartshorne*, 52 N. Y. 173), we do not now discuss, as the case may upon the new accounting be presented in an entirely different light.

The defendants also claim that they should be credited in the account between the parties with the difference between the sum bid by the plaintiff when he bid off this real estate for $12,500 upon the sale under the foreclosure of the Mutual Life Ins. Co. mortgage, and the price ($15,000) received for the same real estate when sold by plaintiff. On the contrary the plaintiff says this difference belongs to the creditors of the surviving partner and should be so disposed of. The real estate covered by the Best mortgages was bid in and purchased by William B. Fitch, the surviving partner in February, 1884, at the sale under the proceedings for the foreclosure of those mortgages which had been continued in his name as such survivor, and he took title in his own name. This real estate as thus purchased represented part of the Ezra Fitch debt, which was partnership property and to which William succeeded as survivor of that firm. It has been settled for many years that upon the death of one partner the survivor becomes the legal owner of the assets and has the exclusive right to sell and dispose of them for the purpose of winding up the partnership affairs, and the survivor does not take such assets in the character of a trustee, but as a survivor holding the legal title. This was decided lately in the case of *Williams* v. *Whedon* (109 N. Y. 333), and it has been the acknowledged law for a long number of years. But although the surviving partner thus takes the legal title to the partnership assets, it is yet plain that they come to him impressed with a certain kind of a trust founded upon his duty to dispose of or realize upon such assets and therefrom to pay the debts of the late firm and to pay over the share of any balance that may then remain and which may belong to the estate of such deceased partner. In occupying this position it has been said by some judges that the surviving partner is not a trustee for the representatives of the estate of the deceased partner and does not bear any fiduciary relations to them.

This, however, is more a question of exact accuracy of expression, than of difference of opinion as to the real duties which a surviving partner owes to the representatives of the estate of the deceased partner.

It is admitted by all that certain rights are conferred upon the representatives of the estate of a deceased partner as against the survivor, and among them is a right to call him to account with reference to his conduct or administration of the assets of the late firm; also a right to compel their application to the payment of the debts of the firm, and to summon him to an accounting and to the payment to them of any balance that may be due the estate.

Lord WESTBURY in *Knox* v. *Gye* (*supra*), while saying that the surviving partner was not a trustee within the strict acceptation of that term, yet admitted that he might be called a trustee so far as his obligations extended to the representatives of the estate of his deceased partner, but that when these obligations had been fulfilled, or discharged, or terminated by law, the supposed trust was at an end. These obligations consist in part at least in the gathering together of the assets of the late firm, realizing upon them, paying the debts of the firm, and, if there be a balance remaining, paying the share due the estate of the deceased partner to the representatives thereof. These are duties, all of which the representatives of the estate of the deceased partner have a plain interest in see-ing performed, and while Lord WESTBURY, in above-cited case from the House of Lords, said the relations were not fiduciary, and Lord Chancellor HATHERLY (page 678) thought they were, there was no difference in the opinion that the survivor owed these duties above spoken of. When, therefore, William B. Fitch, the surviving partner, bid in the real estate under the foreclosure of the Best mortgages, which he owned as survivor, he thereafter held such real estate as representing the Ezra Fitch debt as to which he was a surviving partner, and it became his duty to so treat it. He could not thereafter have sold it without accounting for every penny of it. When he assigned the real estate to his assignee for the benefit of his

creditors, the assignee stood in his shoes, with no higher right to deal with it than he had. And it seems to me that when the prior mortgage on this real estate was foreclosed, and when, upon the sale thereof under the judgment in foreclosure, the assignee bid it in, he took it with this burden or obligation of the survivor still impressed upon it, and when he thereafter sold it at an advance, the proportionate share of that advance belonged to the representatives of the estate of the deceased partner, and they should be credited therewith in the account between them and the assignee of the survivor.

Plaintiff claims that when he bought in the property under the prior mortgage, he did so as assignee and took title thereto under neither Simeon nor William B. Fitch, but under the prior mortgage and free from any equities existing in regard to the real estate as between William B. and the representatives of the estate of Simeon.

The extent of the legal title which the assignee took to the premises sold under the foreclosure sale of the prior mortgage was measured by the title possessed by the mortgagors and mortgaged by them. This, however, has nothing to do with the character in which the assignee purchased at that sale as between himself and third parties. When the assignee bid in the land at the sale under the prior mortgage, it must be remembered that it had already been conveyed to him, subject to the mortgage, by the survivor Fitch, in whose hands it was in equity partnership property, though the full legal title was in him alone, and it formed while Fitch held it a trust fund for the realization so far as possible of the Ezra Fitch debt. As thus conveyed to him the assignee took no greater rights in the land than his assignor had. The assignor certainly could not have purchased it under the prior mortgage and then claim to hold it free from any obligation whatever to account to the representatives of the estate of the deceased partner. And as he could not, it in our opinion follows that his voluntary assignee could not.

The objection now raised by defendants as to improper joinder of parties defendant and also as to a defect in the

complaint, are not of a character to necessitate the affirmance of the judgment. If there be any force in them they can be remedied upon application to the court for leave to amend or for a discontinuance.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.