(82 App. Div. 19.)

## SMITH v. PROSKEY.

(Supreme Court, Appellate Division, First Department. April 9, 1903.)

1. PARTNERSHIP—DISSOLUTION—CONTROL OF ASSETS.

Where an agreement between partners provided for the dissolution of the partnership, appointed one of the partners liquidator, and provided that all assets of the firm should "vest" in the liquidating partner, the agreement did not give the liquidator absolute title, and hence on his death they did not descend to his administratrix.

Patterson and Hatch, JJ., dissenting.

Appeal from Special Term, New York County.

Action by Cornelicutt Smith, as executrix of the last will of Harlan P. Smith, deceased, against David Proskey. From a judgment sustaining a demurrer to the answer (79 N. Y. Supp. 851), defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, PATTERSON, and LAUGHLIN, JJ.

Abram I. Elkus, for appellant.
H. B. Closson, for respondent.

McLAUGHLIN, J. On the 26th of November, 1901, the defendant and one Harlan P. Smith entered into an agreement in writing which provided, among other things, that the partnership theretofore existing between them under the firm name of the New York Coin & Stamp Company was that day dissolved by mutual consent; that Smith was made the liquidating partner of the firm, "and all the stock in trade, book accounts, and other assets of the firm" were "vested in him for that purpose"; that he was to reduce the same to cash, and discharge all the existing obligations of the firm, including all sums of money, if any, theretofore paid in by him to the firm, with interest thereon, if he should be entitled by law to such interest; that the net profits of the business to the date of the agreement should then be ascertained according to law, and equally divided between the parties thereto. In pursuance of this agreement, Smith took possession of the partnership property, and commenced to carry out the terms thereof; but before he had fully done so he died, and the plaintiff was appointed his temporary administratrix. After the death of Smith the defendant took possession of the assets of the firm, and thereupon this action was brought in replevin; the plaintiff claiming to be entitled to such possession by reason of her appointment as the administratrix of her husband's estate. The answer of the defendant set out fully the foregoing facts, and, by reason thereof, demanded that the complaint be dismissed, and that the chattels replevied be returned to him. The facts set out in the answer were admitted by the plaintiff, and were so set forth, as appears from the brief presented by the respondent and admission made upon the oral argument, to the end that the right to the possession of the property seized might be disposed of as one of law. The plaintiff demurred to the answer upon the ground that it was insufficient, in law, upon the face thereof. The demurrer was sustained,

and final judgment thereafter entered awarding the possession of the property to the plaintiff, from which defendant appeals.

The question to be determined turns upon the legal effect to be given to the agreement of dissolution. Did that agreement, in legal effect, change the relation of the parties to, or their title in, the property covered by it? If it did, then the judgment is right, and should be affirmed; otherwise it is wrong, and must be reversed. This is, in effect, conceded by the respondent's counsel; and he also concedes that, if the only purpose and effect of the agreement was to dissolve the partnership and make plaintiff's testator the liquidating partner, that of itself did not deprive the defendant, upon the death of such partner, of the right to take into his possession the assets of the firm for the purpose of completing the liquidation. This concession might well be made, because the general rule is that a dissolution of a partnership does not, ipso facto, destroy the interest of the partners in the partnership property. Murray v. Mumford, 6 Cow. 441. Where a partnership is mutually dissolved, and one of the members of the firm is made the liquidator, the position which such person occupies is one of agency. He becomes the sole authorized agent of the partnership for the single purpose of winding up and finally settling its affairs. He represents creditors, on the one hand, and all of the partners, on the other, and for this reason he is sometimes spoken of as a trustee; but he is not accurately so described, inasmuch as he has in his possession no more property or power after being appointed liquidator than he had theretofore. Before being appointed liquidator, a dissolution having taken place, he could sell and dispose of all the partnership property for the purpose of paying debts, and, if the assets were more than sufficient for this purpose, could divide or insist upon a division of the balance among all of the partners, according to their respective interests therein; and this is precisely what he could do as liquidator, and nothing else. Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554; Story on Partnership, par. 328. Partners do not hold partnership property as joint tenants. Joint tenants cannot dispose of the interest of each other in joint property, but in a partnership each partner is not only a joint owner with the other partners of the partnership property, but he has full power to dispose of the rights of the other partners in such property for the purposes of the copartnership. Another difference between partnership and joint tenancy is that in the former there is no survivorship in the property, while there is in the latter. This difference is pointed out by Mr. Story in his work on Partnership (6th Ed.) § 90. But it is urged by the respondent that the agreement by which Smith was constituted a liquidating partner not only did that, but, in addition, it transferred to him all of the title to the partnership property, and, such title having vested in him, upon his death it passed to his personal representatives. This was the view which seems to have been adopted by the learned justice sitting at Special Term, as appears from the opinion delivered, and his conclusion in this respect seems to have been based mainly upon the use of the word "vested" in the agreement. This word, it will be noticed, appears in the sentence, "All the stock in trade,

book accounts, and other assets of the firm are hereby vested in him for that purpose." In laying stress upon this word, it seems to us that the learned justice not only overlooked the precise interest which each partner had in the partnership property, viz., that the title was already vested in the defendant, but also a cardinal rule applicable to the interpretation and construction of written agreements, which is that the intent of the parties must control, irrespective of the words used, if such intent can be ascertained (Coleman v. Beach, 97 N. Y. 545; Fox v. International Hotel Co., 41 App. Div. 140, 58 N. Y. Supp. 441), and for the purpose of ascertaining the intent the court must not only consider every word used in the agreement, but, if necessary, may resort to surrounding circumstances, to the situation of the parties, and to every fact that will shed light upon any ambiguity existing in the agreement (Preston v. Fitch, 137 N. Y. 41, 33 N. E. 77). In the case just cited, in an agreement dissolving a copartnership a clause was used which provided that it was "mutually agreed to continue to hold as tenants in common" a certain debt. One of the partners died, and it was thereupon contended that the expression "tenants in common" changed the interest of the partners in such debt from partners to tenants in common. The contention was unavailing, the court saying:

"A mistaken designation of the strictly legal character of the holding, a continuance of which is provided for, is immaterial. It is a correct statement of the way in which equity regards the holding. The continuation of the holding was the important matter, while the possible slight error in the legal characterization of what it had been is unimportant. Being of the opinion t..at Simeon and William B. remained partners, in substance, as to the Ezra Fitch debt, it would follow that, upon the death of Simeon, William B. was clothed with all the rights of a surviving partner."

Keeping in mind the above fact, and applying this rule to the facts set out in the defendant's answer, the solution of the question becomes easy. Here were two persons who had been in partnership for years. They mutually agreed to dissolve, pay the debts of the firm, and divide equally between themselves whatever remained. For this purpose one of the partners—presumably, the one most competent to accomplish that result—was selected to bring about the desired end; and for that reason the agreement recites that the assets are "vested in him for that purpose," not for anything else. What was the purpose? Liquidation, payment of the debts, and division of the proceeds. But if there was any doubt about it, the words which follow clearly indicate this intent. All Smith could do was to reduce the property to cash, discharge the firm obligations, and then divide what there was left equally between himself and the defendant. It is true, the agreement states that he is to pay himself out of the proceeds; but he is only to pay himself the debt due from the partnership to him, with interest.

The authorities cited by the respondent are not in point. In all of them it will be found, upon an examination, there was an intent to actually divest the title of one partner; and here, if we are right about the construction of the agreement, there was no such intent. The defendant agreed that his partner should close up the partnership affairs, and for that purpose the property was "vested" in him; that

is, he was given possession of it. He had a right to do that without the agreement, and it therefore added nothing to what he already had. Defendant did not intend to change the title to the partnership property in such a way that upon the death of his partner his personal representatives would have a right to complete the liquidation.

The judgment appealed from, therefore, must be reversed, and the complaint dismissed, with costs, with the right to the appellant to apply to the Special Term for an extra allowance.

VAN BRUNT, P. J., and LAUGHLIN, J., concur.

PATTERSON, J. I dissent from the conclusion of the court in this case. The appeal involves only the construction of the agreement for the dissolution of the partnership that existed between Harlan P. Smith, the plaintiff's testator, and the defendant. The concrete question with respect to the chattels replevied is whether under that agreement such a title to those chattels was conferred upon Smith as would, upon his death, prevent the defendant, as surviving partner, retaking them for the purpose of proceeding with the liquidation of the affairs of the firm.

It seems to me that the proper construction of the agreement requires an affirmative answer to that question. Smith was made the liquidating partner, and all the stock in trade, book accounts, and other assets of the firm were vested in him for that purpose. If the agreement stopped there, there would be no difficulty in upholding the defendant's contention that on the death of Smith the defendant had the right to proceed with the liquidation, and to repossess himself of the assets and book accounts for that purpose. But much more was contemplated and provided for by the agreement. The plaintiff's testator was to reduce the assets, the stock in trade, and book accounts to cash. He was to discharge all the existing obligations of the firm, including all sums of money which he had paid into the firm, with interest thereon, if he should be entitled by law to such interest. That does not refer merely to loans of money that might have been made, but it relates equally to capital that may have been paid into the firm by Smith. There is nothing in the agreement which required the plaintiff's testator to pay to the defendant any money he might have paid in. The defendant had no interest after the liquidation should be completed, except under the clause of the agreement which provides that after the debts shall be paid, and the plaintiff's testator shall have been repaid, with interest, any moneys which he might have paid into the firm, "the net profits of the business to date shall then be ascertained according to law, and equally divided between the parties hereto." Furthermore, under this agreement, provision is made transferring to the defendant, in his own right, that which otherwise would have been an asset of the firm in liquidation. The agreement provides that:

"The lease of the premises now occupied by the firm at No. 849-853 Broadway, shall be assigned from this date to Mr. Proskey, and he may carry on the business there under the same name or any other firm name, as he may prefer."

Here the lease of the premises and (by the right to use the firm name) the good will of the business are transferred to the defendant. There appears to have been a complete severance of the rights and of the relations of the partners under this agreement. The liquidation was to be conducted absolutely by the one partner. The lease of the premises upon which the business had been conducted, and the right to use the firm name, were transferred to another. Manifestly, the plaintiff's testator, under this agreement, stood in some other relation to his copartner than that of a mere liquidator. Under that agreement he was entitled to the possession of the assets, and the book accounts, and the stock of goods, as security for the payment to himself, after the debts of the firm were discharged, of whatever moneys he may have put into that concern, without liability on an accounting for anything the defendant may have contributed to the firm. The defendant's interest in the liquidation was confined expressly to a share in the net profits. I think it was within the contemplation of the parties that the stock in trade, book accounts, and the other assets of the firm should not go back into the possession of the defendant, and that for the relinquishment of his right to that possession he received the assignment of a lease, and the right to do business under the firm name, if he wished to continue its use for his own benefit.

There is no question in which creditors are interested. The whole subject is merely one of construction. What did the parties intend? I am of the opinion that the demurrer was well decided at the Special Term.

HATCH, J., concurs.