unreasonably restrictive because its effect is to prohibit the casual use of roads by individuals who, not in the general business of carriage for hire, but as mere agents for another, casually haul, making a charge therefor.

In our opinion, the act does not admit of such interpretation. We think it is directed at and reaches only those persons who, as complainant and interveners do, make their living off of carriage on the roads. Besides, none of those in this case are casual carriers; they are all in it as a business. In fact, there is more than a little question as to whether, though the particular work they are now doing may be under private contract, they are not really common carriers, since they in fact hold themselves out for all the work which they may get to do.[6] Certainly none of them is a casual carrier, or in a position to complain on behalf of such carrier of hardships which the law may have imposed upon him.

We do not any more agree with the intervener Finnegan that he is an interstate carrier. His contract is made in Texas; his carriage is in Texas. Whether the goods which he is carrying have really come to rest before he picks them up, or are in the course of continuous transit, the record does not show. But, if it did show the facts to be as he contends, we think it would be a straining of the point to say, because the goods he handles intrastate have come from outside of it, that the requirement that the carrier who contracts wholly in Texas, and who carries wholly there, procure a permit to do so, and submit himself to the regulations which the state requires, constitutes a burden on interstate commerce.

The case comes at last to the one great question, whether those engaged generally in the unregulated business of the carriage of goods for hire may, merely because they carry usually for single individuals and upon special terms, by invoking the Fourteenth Amendment, maintain the right to continue to do such business on the public roads, against the will of the state asserted by statute that they shall not do so.

We think the question admits of only one answer, that the requirements of the Texas statute are valid, and that, if plaintiff and interveners wish to conduct their business on the highways of this state, they must comply with them.

So believing, we deny the temporary injunction prayed for.

WEST, District Judge, concurs.

KENNERLY, District Judge (dissenting).

In what is said respecting those regulations contained in the Legislative Act (House Bill 335), which concern traffic safety and highway protection, I fully concur. McLeaish v. Binford (D. C.) 52 F.(2d) 737; Sproles v. Binford (D. C.) 52 F.(2d) 730; and McLeaish v. Binford (D. C.) 52 F.(2d) 151, and cases there cited.

I cannot, however, see my way clear to concur in the disposition made of the questions raised and presented by complainant and interveners (who are I think clearly contract carriers or private carriers, and not common carriers) respecting those regulations in the act which in no real sense concern traffic safety and highway protection, but are in fact a regulation of the business, and a restriction of the right of contract, of the contract carriers. I think there is no material difference in legal effect between the Michigan, Washington, California, and Florida Acts and this act, and that Michigan v. Duke, 266 U. S. 571, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105; Buck v. Kuykendall, 267 U. S. 314, 45 S. Ct. 324, 69 L. Ed. 623, 38 A. L. R. 286; Frost v. Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; and Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264, are controlling. I think the temporary injunction prayed for, restraining the enforcement of the last-mentioned regulations, should be granted.

### In re DUNN.

District Court, E. D. New York.
Sept. 25, 1931.

---

[6] "Regulation of the Contract Motor Carrier under the Constitution," Harvard Law Review, vol. XLIV, No. 4, p. 536; "Motor Carrier Regulation, Federal, State and Municipal," Columbia Law Review, vol. 26, pp. 963, 964.

Sweet, Lefenfeld & Sweet, of New York City (Irving Sweet, of New York City, of counsel), for petitioning creditor.

Edgar T. Beamish, of Brooklyn, N. Y., for Samuel Black, administrator.

### MOSCOWITZ, District Judge.

This is a motion made by the petitioning creditor to strike out the answer interposed by the administrator of the estate of Robert Wagner, deceased, and that James F. Dunn individually, and as sole surviving partner of the copartnership formerly known as Dunn & Wagner, the alleged bankrupts herein, be adjudicated a bankrupt upon default in pleading and upon consent to an adjudication filed by the surviving partner Dunn.

An answer has been interposed by Samuel Black as administrator of Robert Wagner, deceased. Robert Wagner, the deceased, died before the filing of the petition in bankruptcy. An administrator of a deceased partner, as such, cannot plead to a petition in bankruptcy against the surviving partner.

Section 18. subd. b, of the Bankruptcy Act (11 USCA § 41(b), provides: "(b) The bankrupt, or any creditor, may appear and plead to the petition within five days after the return day, or within such further time as the court may allow." Under section 18, subd. b, the only ones permitted to file an answer are the bankrupt and a creditor. The administrator of the deceased partner is neither.

Under the laws of the state of New York, upon the death of one partner the title to the assets or property of the partnership is in the surviving partner as legal owner. In Costello v. Costello et al., 209 N. Y. 252, at page 259, 103 N. E. 148, 151, Judge Collin said: "The death of the testator dissolved the firms, and the interest passed to his executors. The title to the assets or property interests of the firms was thereafter in the surviving partners as legal owners, and not as trustees in the strict sense of that term although the law imposed upon them certain obligations of a fiduciary nature. The title to partnership property is not in the individual members of the firm, so that either may assign or transfer to another an undivided share in any specific articles, but it is in the firm as an entirety, subject to the right of the partners to have it applied to the payment of the debts of the firm and the equities of the partners, and surviving partners succeed to the exclusive possession and control of the assets and the right, within the limits of good faith, of disposing of the assets and closing the partnership affairs. Williams v. Whedon, 109 N. Y. 333, 16 N. E. 365, 4 Am. St. Rep. 460."

In McCann et al. v. Hazard et al., 36 Misc. Rep. 7, 72 N. Y. S. 45, at page 48, Judge Forbes said: "On the death of one member of a co-partnership the surviving member becomes the legal owner of the assets of the firm. The survivor has the exclusive right to sell, mortgage, and dispose of the fund, in the performance of his duty in closing up the affairs of the co-partnership. The surviving partner does not take such assets as trustee, but as survivor, in the nature of a trust, holding the legal title subject to the equitable right of the deceased partner to have the assets applied first to the payment of the firm's debts, then to a distribution of any surplus. Williams v. Whedon, 109 N. Y. 333, 16 N. E. 365, 4 Am. St. Rep. 460; Durant v. Pierson, 124 N. Y. 444, 26 N. E. 1095, 12 L. R. A. 146, 21 Am. St. Rep. 686; Bell v. Hepworth, 134 N. Y. 442, 31 N. E. 918; Preston v. Fitch, 137 N. Y. 41, 33 N. E. 77; Russell v. McCall, 141 N. Y. 437, 36 N. E. 498, 38 Am. St. Rep. 807."

A voluntary petition in bankruptcy may be filed by a surviving partner. In re Salladay (D. C.) 22 F.(2d) 300.

Under the laws of the state of New York, a sole surviving partner may file a general assignment for the benefit of creditors without the consent of the representative of the surviving partner. Haynes v. Brooks, 116 N. Y. 487, 22 N. E. 1083.

It is clear, therefore, that an administrator of a deceased partner, as such, may not plead to a petition in bankruptcy against the surviving partner. The court is bound by the provisions of the Bankruptcy Act, and there is no discretion in the court to permit

the filing of an answer by the representative of a deceased partner.

Motion to strike out the answer and for adjudication will be granted. Settle order on notice.

## UNITED STATES v. GREATER NEW YORK LIVE POULTRY CHAMBER OF COMMERCE et al.

District Court, S. D. New York.

May 5, 1931.

John Lord O'Brian, Asst. to Atty. Gen. (Walter L. Rice, Sp. Asst. Atty. Gen., of counsel), for the motion.

Samuel H. Kaufman, of New York City, opposed.

WOOLSEY, District Judge.

This motion is granted.

I. As none of the parties saw fit to enter any formal order embodying the views expressed by Judge Bondy in his opinion, handed down herein on August 9, 1930, 44 F.(2d) 393, 394, admirably discussed in a Recent Case Note in volume XLIV of the Harvard Law Review, at page 997, his labors have not matured into a judicial act, and therefore I feel free to deal with the motion now brought before me, which in effect is made in pursuance of Judge Bondy's suggestion.

II. This motion to strike out is directed against the denials of conspiracy in separate answers of certain of the defendants who were found guilty of the same conspiracy before Judge Knox and a jury in the case of United States of America v. Greater New York Live Poultry Chamber of Commerce et al. (D. C.) 33 F.(2d) 1005, affirmed 47 F. (2d) 156 (C. C. A. 2).

Such purging of the pleadings as is hereby sought is, in my opinion, admirable practice, and wholly within the power of an equity court, though not mentioned in Rule 21 of the Equity Rules of the Supreme Court (28 USCA § 723). For it would be a sorry doctrine for an equity judge to hold that common sense could be repealed by implication.

An instance of the approved use of this practice in actions at law is found in Peacock v. United States, 125 F. 583, 586 (C. C. A. 9), and the effect of not making such a motion in a case where it is appropriate is dealt with in American Surety Co. v. Sandberg (D. C.) 225 F. 150, 151.

This technical objection to the motion before me is the only point argued; none other is arguable. Consequently the moving party must prevail.

Settle order on three days' notice.

## UNITED STATES v. GREATER NEW YORK LIVE POULTRY CHAMBER OF COMMERCE et al.

District Court, S. D. New York.

Oct. 26, 1931.

