Brooklyn Bank, Respondent, *v.* Frank A. Barnaby, Appellant.

Statute of Limitations — a common-law pledgee having authority to sell collateral and apply the proceeds to the payment of a note is not the representative of the pledgor for the purpose of extending the period of the Statute of Limitations — pledgor is not required to protest or object to sale and application of proceeds, and his failure to do so does not affect the running of the statute — when promise to pay deficiency does not revive the liability or constitute a new promise sufficient to extend the period of limitation.

At common law, a pledgee of stocks and bonds, given to him as collateral security for a debt which the pledgor owes him, may sell the collateral and apply the proceeds, but only upon reasonable notice to the debtor.

Where the holder of a note with collateral is empowered to sell such collateral "without notice at the Board of Brokers or at public or private sale" he has only the power he would have had under the common law in the absence of a written contract, except as to the manner of sale.

A common-law pledgee having merely a general authority to sell and apply the proceeds to the payment of the debt is not the agent or representative of the pledgor for the purpose of extending the period of the Statute of Limitations.

A part payment, whether made before or after a debt is barred by the statute, does not revive the contract unless made by the debtor himself or by some one having authority to make a new promise for the residue.

The fact that a pledgor who is notified of the sale of collateral held by the pledgee does not protest or object does not affect the running of the statute, since the creditor is only doing what he had a right to do and the pledgor's silence is no evidence of ratification by him.

When the right of action upon a debt is otherwise barred by the statute, such right does not survive upon the special written promise of the debtor to pay any deficiency which might exist after a sale of pledged collaterals and the application of the proceeds of such sale upon the debt.

*Brooklyn Bank* v. *Barnaby*, 126 App. Div. 936, reversed.

(Argued May 19, 1909; decided January 4, 1910.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered

May 16, 1908, affirming a judgment in favor of plaintiff entered upon a decision at a Trial Term without a jury.

This is an action upon a promissory note for $68,000, made and delivered by the defendant to the plaintiff, bearing date February 12th, 1894, and payable on demand, with interest. Attached to the note was a schedule of securities, which the defendant had deposited with the plaintiff as collateral, and this was followed by a written authorization empowering the bank, its president and cashier, to sell without notice at the board of brokers, or at public or private sale, at the option of the bank, its president or cashier, in case of the non-payment of the note, the net proceeds to be applied to the payment of the note, including interest; the surplus, if any, to be accounted for, and the deficiency, if any, to be paid by the defendant.

Beginning with the 8th day of March, 1894, and continuing to and including the 2nd day of October, 1895, the defendant made certain payments, as to which there is no dispute, and which were duly indorsed on the back of the note. The plaintiff contends that two payments of later date were made, the first on the 24th day of August, 1899, amounting to $526.50, and the second on the 10th day of December, 1901, amounting to $1,775. The defendant, while admitting the transaction upon which the plaintiff predicates its claim of these two last payments, denies that they were such payments as to affect the running of the Statute of Limitations, and it is upon that theory that he defends this action.

The action was commenced on September 12th, 1906. That was eleven years after the last conceded payment of October, 1895; seven years after the first disputed payment of August 24th, 1899, and five years after the last disputed payment of December 10th, 1901.

The case was tried before the court without a jury, and the court expressly found that all the payments contended for by the plaintiff were in fact made; but it also found the specific facts constituting the disputed payments of 1899 and 1901.

The findings which relate to the transaction of 1899 are as

follows : " That on the 24th day of August, 1899, the plain-
tiff, at the request of the defendant, returned to the defend-
ant seventy-five (75) shares of the Knickerbocker Steam Boat
Co. stock, mentioned in the promissory note set forth in the
second finding of fact, which request was made in the words
and figures following :

" ' BROOKLYN, N. Y., *Aug.* 24, 1899.
" ' To THE BROOKLYN BANK :

" ' Please deliver to bearer : 75 shares Knickerbocker Steam-
boat Company now held as collateral security in my loan of
Feby. 12th, 1894, and accept in place thereof five hundred
and sixty-two 50 dollars ($562.50).

" ' Respectfully,
" ' (Signed)          F. A. BARNABY.'

" That at the time of the delivery of said seventy-five (75)
shares of the Knickerbocker Steamboat Company stock,
Thomas M. Halsey, Cashier of the plaintiff bank, endorsed
upon the promissory note set forth in the second finding of
fact, the following matter :

" ' Aug. 24th, 1899.  Rec'd. $\frac{a}{c}$ within loan five hundred
and sixty-two 50/100 Dollars and ret. 75 shares Knicker-
bocker Steamboat Co.

" ' THOS. M. HALSEY, *Cash.*' "

The details of the transaction of December, 1901, the court
found to be as follows :

" That on the 10th day of December, 1901, the plaintiff
sold at private sale twenty-five (25) shares of Eagle Ware-
house Company stock, being part of the collateral security
mentioned in said promissory note set forth in said second
finding of fact, and received therefor the sum of $1,775.00.

" That after the sale of the said twenty-five (25) shares of
the Eagle Warehouse Company stock, the plaintiff on the
10th day of December, 1901, sent a letter by mail to the
defendant notifying him of the said sale.

" That the said letter mentioned in the foregoing finding
of fact was written and mailed after the sale of the said

twenty-five (25) shares of the Eagle Warehouse Company stock had been made.

" That the plaintiff credited the proceeds of the sale of the said twenty-five (25) shares of the Eagle Warehouse Company stock to the account of the loan.

" That on the 10th day of December, 1901, the cashier of the plaintiff bank made and indorsed upon the back of the promissory note mentioned in the second finding of fact the following indorsement: 'December 10th, 1901. Rec'd. a/c within loan fourteen hundred and thirty-seven 50/100 from sale of 25 shares Eagle Warehouse Co.

" ' THOS. M. HALSEY, <i>Cash.</i> ' "

Upon all the findings of fact, the trial court based the legal conclusion that the exchange of stock for money in 1899, and the sale of the Eagle Warehouse Company stock in 1901, constituted payments which kept the note alive, so that the Statute of Limitations had not run when the action was commenced.   Upon these findings and conclusions, judgment was entered for the plaintiff, and upon defendant's appeal to the Appellate Division that judgment was unanimously affirmed.   The defendant now appeals to this court and the question which we are called upon to consider is whether the plaintiff's right of action upon the note is barred by the six years' Statute of Limitations.

*Emanuel J. Myers* and *Gordon S. P. Kleeberg* for appellant.   The existence of the written authority to sell the pledge and apply the proceeds is immaterial because the law confers that power and in fact imposes that duty, upon the pledgee, as an obligation towards the pledgor.   (*Jerome* v. *McCarter*, 94 U. S. 734; *Hulbert* v. *Clark*, 128 N. Y. 295; *House* v. *Carr*, 185 N. Y. 453.)   The plaintiff's application of the proceeds of the sale of the collateral security, although made under the power of sale contained in the note, was not a part payment from which a promise to pay the balance of the debt could be inferred.   (*Buffington* v. *Chase*, 152 Mass. 334; *Campbell*

v. *Baldwin*, 130 Mass. 199; *Westinghouse* v. *Boyle*, 126 Mich. 677; *Regan* v. *Williams*, 88 Mo. App. 577; *Thomas* v. *Brewer*, 55 Iowa, 227; *Moffit* v. *Carr*, 48 Neb. 403; *Smith* v. *Ryan*, 66 N. Y. 352; *Brown* v. *Latham*, 58 N. II. 30; *Pickett* v. *Leonard*, 34 N. Y. 175.) To toll the Statute of Limitations there must be a voluntary and deliberate act of the debtor, or of his agent thereunto authorized, evincing an intention on his part to acknowledge the debt and to pay it. (*Cooper* v. *Simpson*, 41 Minn. 46; *Wolford* v. *Cook*, 71 Minn. 77; *H. L. Ins. Co.* v. *Elwell*, 111 Mich. 689; *Becker* v. *Oliver*, 111 Fed. Rep. 672; *Smith* v. *Ryan*, 66 N. Y. 352; *Pickett* v. *Leonard*, 34 N. Y. 175; *Adams* v. *Olin*, 140 N. Y. 150; *Crow* v. *Gleason*, 141 N. Y. 489; *Bank* v. *Smith*, 26 Hun, 221; *Peck* v. *U. S. M. S. S. Co.*, 5 Bosw. 226.) The sale of collateral by the bank's direction at private sale, and the circumstances surrounding the entire transaction create an irresistible inference that the defendant had refused to make any further payments and no longer admitted any liability on the note. (*Pickett* v. *Leonard*, 34 N. Y. 175; *Shoemaker* v. *Benedict*, 11 N. Y. 181; *Arnold* v. *Downing*, 11 Barb. 554; *Harper* v. *Fairley*, 53 N. Y. 442; *Compton* v. *Bowns*, 25 N. Y. Supp. 465; *Hale* v. *Morse*, 49 Conn. 481; *Weston* v. *Hodgkins*, 136 Mass. 326; *Parsons* v. *Clark*, 59 Mich. 414; Wood on Limitations of Actions, § 97.) The indorsements by the cashier of payment upon the note in no way affect the question of the Statute of Limitations. (*Regan* v. *Williams*, 88 Mo. App. 577; *Camp* v. *Smith*, 1 N. Y. Supp. 375; 117 N. Y. 354; *Nat. Bank* v. *Rowland*, 1 Col. App. 468.) The "endorsements on the note" do not satisfy the burden of proof which rests on the creditor to show an intent to pay the balance of the debt and to prove all the elements requisite to give a part payment the effect of removing the statutory bar. (*Burdick* v. *Hicks*, 29 App. Div. 205; *U. C. S. Inst.* v. *Deyo*, 116 App. Div. 1; *Littlefield* v. *Littlefield*, 91 N. Y. 203; *Mason* v. *Henry*, 152 N. Y. 259; *Murphy* v. *Walsh*, 113 App. Div. 428; *Matteson* v. *Palser*, 56 App. Div. 97; *Murdock* v. *Waterman*, 145

N. Y. 55; *Briggs* v. *Roberts,* 85 N. C. 451; *Crow* v. *Gleason,* 141 N. Y. 489; *Thomas* v. *Brewer,* 55 Iowa, 227.)

*Stephen P. Anderton* and *S. Stanwood Menken* for respondent. The running of the Statute of Limitations was renewed by the payment of December 10, 1901. (*Miller* v. *Talcott,* 54 N. Y. 114; *F. Nat. Bank* v. *Ballou,* 49 N. Y. 155; *McMullin* v. *Rafferty,* 89 N. Y. 456; *Harper* v. *Fairley,* 53 N. Y. 442; *McDonald* v. *McDonald,* 28 N. Y. S. R. 18; *McLaren* v. *McMartin,* 36 N. Y. 88; *Pickett* v. *Leonard,* 34 N. Y. 175; *Adams* v. *Olin,* 140 N. Y. 150; *Crow* v. *Gleason,* 141 N. Y. 489; *Winchell* v. *Hicks,* 18 N. Y. 558.) The fact that payment was made while the obligation was in full force renders the effect of payment unquestionable. (*Lawrence* v. *Harrington,* 122 N. Y. 408; *Holly* v. *Gibbons,* 176 N. Y. 520; *Hamlin* v. *Smith,* 72 App. Div. 601; *Matter of Dunn,* 5 Dem. 124; *Winchell* v. *Hicks,* 18 N. Y. 558.) Indorsement upon the note affords sufficient evidence of payment to avoid the statute. (*Matter of Kellogg,* 104 N. Y. 648; 5 N. Y. S. R. 668; *Mills* v. *Davis,* 113 N. Y. 243; *Hulbert* v. *Nichol,* 20 Hun, 454; *Read* v. *Hurd,* 7 Wend. 410; *Risley* v. *Wightman,* 13 Hun, 163; *Rosebloom* v. *Billington,* 17 Johns. 182.) The true test as to avoiding the Statute of Limitations by part payment is whether the transaction would have supported a plea of payment if the creditor had brought an action without recognizing it. (Wood on Limitations [3d ed.], 276; *Matter of Thompson,* 5 Dem. 397; *Kirkpatrick* v. *Goldsmith,* 81 App. Div. 265; *Hooper* v. *Stevens,* 4 Ad. & El. 71; *Bodger* v. *Arch,* 10 H. & G. 333; *Amos* v. *Smith,* 1 H. & G. 233.)

WERNER, J. The action was brought, as stated in the foregoing compendium of facts, to recover upon a promissory note. The only defense interposed is that of the Statute of Limitations. The question whether that defense is valid or not depends upon the legal effect of two transactions which are relied upon by the plaintiff to take the case out of the

operation of the statute. The repetition of a few facts will
disclose the bearing of these transactions upon the issue
presented.

The note was made on the 12th day of February, 1894.
Between that date and the 2nd day of October, 1895, several
payments were made upon the note, which the defendant
admits by not denying them. The learned trial court found
that on the 24th day of August, 1899, and the 10th day of
December, 1901, the defendant made further payments, and
these findings have been unanimously affirmed by the Appel-
late Division. If there were no further findings upon that
feature of the case, the unanimous affirmance would compel
us to assume that there was evidence to support the legal con-
clusion that payments were made by the defendant in 1899
and 1901. The trial court went further, however, and found
the specific facts constituting the transactions in these two
years. From these specific findings it appears that in August,
1899, the defendant requested the plaintiff to release a part
of the collateral held as security for the payment of the note,
" and accept in place thereof Five hundred and sixty-two dol-
lars and fifty cents." The plaintiff complied with the defend-
ant's request, and indorsed the money received by it as a
payment upon the note. This payment is relied upon by the
plaintiff to extend the period of limitation for six years from
the time when it was made, and the defendant contends that
it had no effect upon the running of the statute. Upon this
question we think the finding of the learned trial court was
correct. The effect of the transaction of 1899 was to extend
the period of limitation. It was a payment made by the
defendant himself upon his written request that the plaintiff
accept a certain sum of money in lieu of a part of the col-
lateral then held by it. It was made under circumstances
which clearly support the implication that the defendant
intended to acknowledge the obligation of the debt, and to
make a new promise to pay the balance due.

The next transaction relating to the note in suit occurred
on the 10th day of December, 1901. On that day the plain-

tiff, upon its own initiative, sold some of the collateral which it held, and realized thereon the sum of $1,775. Of that amount it applied the sum of $337.49 upon the interest which had accrued upon the note, and the balance of $1,437.51 it indorsed upon the note to apply on the principal remaining unpaid. After the sale the plaintiff mailed to the defendant a letter notifying him of what had been done.

It is this last mentioned transaction of 1901 that presents the real question in the case, and that is whether the plaintiff's exercise of the right to sell the collateral and apply the proceeds constituted such a payment by the defendant as to extend the period of limitation for another six years from that time. If that was such a payment the defendant's plea of the statute is unavailing for the action was brought within six years; if that was not such a payment the plea is good, since the action was not commenced until seven years had elapsed after the payment of August, 1899. The contention of the plaintiff is that in selling the pledged collateral and applying the proceeds thereof to the payment of the note, it acted as the agent of the defendant with express authority to sell and apply, and that the legal effect of such sale and application is precisely the same as though the payment had been made by the defendant himself under circumstances from which the law would imply such an acknowledgment and new promise as to extend the statutory period of limitation. The defendant admits the authority of the plaintiff to sell the collateral and apply the proceeds thereof to the payment of the note, but denies that the legal effect of this was to bind him by a new promise which operated to renew the running of the statute. These conflicting claims, based upon undisputed facts, bring into the foreground of the discussion the extent of the plaintiff's authority under the power to sell and apply. The language of the authorization is that the plaintiff may " sell without notice at the Board of Brokers or at public or private sale, * * * applying the net proceeds to the payment of this note."

At common law a pledgee of stocks and bonds given to

him as collateral security for a debt which the pledgor owes him, may sell the collateral and apply the proceeds, but only upon reasonable notice to the debtor. (2 Kent. Com. 581, 582 ; Story on Bailments, §§ 287, 308, 310 ; *Wheeler* v. *Newbould,* 16 N. Y. 392, 397 ; *Markham* v. *Jaudon,* 41 id. 235, 241 ; *Porter* v. *Parks,* 49 id. 564, 569.) Since the time of *Hart* v. *Ten Eyck* (2 Johns. Ch. 62), which was decided by Chancellor KENT in 1816, it has been the unquestioned law of this state that after a debt is due a pledgee may sell upon reasonable notice to the pledgor. The most cursory comparison of this common-law rule with the authorization in the case at bar at once discloses the only difference between them. It relates wholly to the manner of sale. The plaintiff was empowered to sell at the " Board of Brokers, without notice, or at public or private sale." In all other respects the power expressly given to the plaintiff was simply that which it would have had under the common law in the absence of a written contract. This view of the case very summarily disposes of the contention that, under the special written authority, the plaintiff acquired some right to bind the defendant with respect to the Statute of Limitations that it would not have had as a common-law pledgee. It had the option to sell at public or private sale, with or without notice, but beyond this it had no rights or powers that are not given to any common-law pledgee of stocks and bonds. Assuming this to be demonstrated by the law and logic of the situation, the next question to be considered is whether a common-law pledgee, having merely a general authority to sell and apply, is the agent or representative of the pledgor for the purpose of extending the period of the Statute of Limitations.

Few lawyers would have the courage to argue that under a general authority to sell securities and apply the proceeds, a pledgee would have power to revive a debt against his pledgor already barred by the statute. That consideration may be safely dismissed without discussion since counsel for the plaintiff presents no such contention. He practically concedes that if the debt had been outlawed in 1901, when the

last sale of securities and application of proceeds was made, nothing that the plaintiff did or had power to do under the authority given to it could have operated to revive, the debt and extend the running of the statute. He does claim, however, that there is a vital distinction between such a case and one where the pledgee sells the securities and applies the proceeds before the debt is outlawed. In the latter case, he insists, the pledgee must be deemed the agent of the pledgor, not merely for the purposes of sale and application of proceeds, but in everything that commits the pledgor to an extension of the period of limitation when he makes a payment himself. This is an interesting distinction which has some apparent support in reason, but the decided weight of authority, both in this state and in other states, favors the contrary view. Although recognized as valid by a few of the courts of last resort in other states, it has been thought by many more to be unsound in principle, and that is the position which has been taken by this court. The question has not been considered upon the precise facts presented in the case at bar, but it has been decided in cases so identical as to be controlling under the rule of *stare decisis.*

In the early case of *Shoemaker* v. *Benedict* (11 N. Y. 176) the original defendants were the makers of a promissory note. Only one defendant answered, and he set up the defense of the Statute of Limitations. It appeared that the note bore date the 30th day of March, 1838 ; that between that time and the 18th of September, 1849, there had been indorsed upon the note five separate payments of interest ; and it was admitted that all of these payments had been made, not by the defendant who pleaded the Statute of Limitations, but by a co-defendant. The action was brought on the 30th day of July, 1850. This was twelve years after the day upon which the note was dated, but only one year after the last of a series of payments beginning in 1839, and continuing in 1840, 1843 and 1849. It was held that these payments made by one of the joint debtors, kept the note alive as to him, but did not affect the defense of the statute as to the defendant who did

not pay, *and that it made no difference whether the payments were made before or after the Statute of Limitations had attached to the debt.* In speaking for this court upon that point Judge ALLEN said: " That a promise made while the Statute of Limitations is running, is to be construed and acted upon in the same manner as if made after the statute has attached, is decided in *Dean* v. *Hewit* (5 Wend. 257) and *Tompkins* v. *Brown* (1 Denio, 247). * * * And in principle, I see not why a promise made before the statute has attached to a debt, should be obligatory when made by one of several joint debtors, when it would not be obligatory if made after the action was barred. The statute operates upon the remedy. The debt always exists. An action brought after the lapse of six years upon a simple contract, must be upon the new promise, whether the promise was before or after the lapse of six years, express or implied, absolute or conditional. *The same authority is required to make the promise before as after the six years' have elapsed.*" (p. 186.)

Again in the case of *Winchell* v. *Hicks* (18 N. Y. 558) the learned judge who wrote for the court said, that until the decision in *Shoemaker* v. *Benedict* (*supra*) it had been supposed by some " that there might be some distinction in principle between payments or promises made before and those made after the statute had attached ; some stress having been laid upon the fact in the case of *Van Keuren* v. *Parmelee* (2 N. Y. 527), that the promise was made after the demand had been barred by the operation of the statute. * * * But in *Shoemaker* v. *Benedict* the point was directly before the court and it was adjudicated, * * * that it is immaterial whether such payment is made before or after the statute has attached ; that in neither case is it binding upon any but the several debtors, where the debt is joint and several, and as to the rest the statute is a bar." (p. 560.)

In the later case of *Pickett* v. *Leonard* (34 N. Y. 175) the question arose whether the running of the statute could be arrested by an assignee for the benefit of creditors in making payment upon a note executed by the assignor. There the

note was made in October, 1852. Two days later the maker executed an assignment for the benefit of creditors. On July 11th, 1853, within a year after the date of the note, the assignee made a payment upon it. The action on the note was commenced on the 16th day of October, 1858, which was within six years of the payment referred to, but more than six years after the execution of the note. This court there decided that the payment by the assignee did not extend the statute as to the maker of the note, and in the opinion reference is made to the cases of *Shoemaker* v. *Benedict* and *Winchell* v. *Hicks* (*supra*), as having flatly decided that, for the purpose of determining whether a payment extends the bar of the Statute of Limitations, it makes no difference whether the payment is made before or after the debt is barred.

The next case in which this court had occasion to consider the same question was in *Harper* v. *Fairley* (53 N. Y. 442). There the case arose upon the joint and several promissory note of two makers. It was dated March 31st, 1853. Suit was commenced upon it in June, 1869. Thus sixteen years had elapsed between its execution and the institution of the action. It appeared, however, that in 1857 one of the makers delivered to the holder the promissory note of a third person, which was dated March 26, 1857, payable on the following first of January, and when collected the proceeds were to be applied. Payments of interest were made from time to time upon this collateral note, and the principal thereof was paid either in November of 1862 or in the same month of 1863. The court charged the jury that the payments made upon the collateral note by the maker thereof had the same effect to take the case out of the Statute of Limitations, as against the defendants who were the makers of the principal note, as though they had been made by the defendants themselves, and that if the jury should find the last payment to have been made in November, 1863, which was within six years of the date of the commencement of the action, the plaintiff was entitled to recover. The plaintiff did recover, and upon appeal to the General Term his judgment

was affirmed; but when the case reached this court there was a reversal upon the precise question involved in the case at bar. There, as here, the holder of the note, within the period of the statute, received the proceeds of collateral and applied it in payment of the note. The only difference in circumstance is that in the *Harper* case the payments were made by the maker of a note put up as collateral, while in the case at bar the payments were applied by the holder of the collateral. Both cases are identical, however, in the crucial fact that the payments were not made by the makers of the notes upon which the suits were brought. In the *Harper* case Judge Rapallo emphasized the previous rulings of this court " that a part payment, *whether made before or after the debt is barred by the statute*, does not revive the contract, unless made by the debtor himself or by some one having authority to make a new promise on his behalf for the residue." (*Harper* v. *Fairley, supra,* 445.) In his discussion of the subject the learned jurist very clearly pointed out that " The effect of a part payment in taking a case out of the operation of the Statute of Limitations, or rather in enlarging the time during which an action may be brought, is not derived from any statutory provision, but results from the decisions of the courts, and depends wholly upon the reason of those decisions. The reason is that a part payment made on account of a claim is an acknowledgment by the debtor of his liability for the whole demand; and from this acknowledgment a new promise on his part to pay the residue is implied. The undertaking of the debtor, as to the unpaid part of the debt is, thus, by a legal presumption, renewed and made to date from the time of the part payment." (p. 444.) That this view of the effect of a part payment, as related to the Statute of Limitations, has not changed in this court in recent times, is shown in *Adams* v. *Olin* (140 N. Y. 150), where Judge Gray reiterated the rule that a payment will not be regarded as an admission of an old debt unless it is the " deliberate act of the debtor, evidencing, or accompanied by some evidence of, an intention to thereby acknowledge to his creditor the existence of the greater indebtedness,"

(p. 160) and in *Crow* v. *Gleason* (141 N. Y. 489), where Judge EARL said that, " In order to make a money payment a part payment within the statute, the burden is upon the creditor to show that it was a payment of a portion of the admitted debt, and that it was paid to and accepted by him as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder." (p. 493.)

In support of the contention of counsel for the plaintiff that there is a distinction between a payment or acknowledgment made before and one made after a debt is barred by the statute, several cases are cited which will be briefly considered. In *Winchell* v. *Hicks* (*supra*) the action was upon a note made by a principal and three sureties. Five years thereafter the holder called upon two of the sureties for payment, and they referred him to the principal, who was told of what had transpired, and then made a payment. This was held to be such an acknowledgment of liability as to arrest the running of the Statute of Limitations against the two sureties. It is to be noted, however, that it was distinctly held not to have that effect upon the third surety who took no part in the transaction, and that the liability of the two others was based solely upon the ground that they had referred the matter to their principal debtor, and thus bound themselves by his acts.

The case of *Lawrence* v. *Harrington* (122 N. Y. 408) is also relied upon by the plaintiff. That was an action brought to recover moneys expended for the use of a firm of which the defendant was the surviving partner. The defendant pleaded a discharge in bankruptcy, and the Statute of Limitations. Upon the trial it appeared that the plaintiffs had loaned their promissory notes to the defendant's firm, and thereafter the latter were adjudged bankrupts and discharged of their debts. Subsequently the plaintiffs renewed two of these notes, and the defendants made some payments on account. The renewal notes matured in 1878, and were then paid by the plaintiffs. In 1883 and 1884, which was within

the six years, the defendant's firm performed work for the plaintiffs, under an agreement that one-half the amount should be credited upon the old accounts, and such credits were accordingly made. That was held sufficient to take the case out of the statute. The defendant took the position that as the credits were made under a special agreement which would not be binding unless fully performed by the defendant's firm, the credits could not be regarded as an unequivocal ·acknowledgment of the old debt, or as evidence of a new promise to pay the amount unpaid. It was with reference to that peculiar situation that Judge BROWN wrote that "There would be some force in this argument if the debt had been barred by the statute at the time the work was performed; but the debt was at that time an existing obligation enforceable against defendant's firm." (p. 415.) This language is to be construed in the light of the salient facts that the special agreement was made by the debtors themselves, and that the learned judge who wrote for the court was considering the weight of the evidence relied upon as constituting a new promise. The debtor can always make a new promise, but where circumstances are relied upon to constitute such a promise it may make a radical difference whether they occurred before or after the debt was barred. In the former case, with a debt still alive, it would require less evidence to create a promise to extend the running of the statute than in the latter case, with a debt barred, to revive the debt and renew the expired period. That is not the question in the case at bar. Here the inquiry is whether the plaintiff ever had any authority to make a new promise that would bind the defendant, and if it never had such authority it can make no difference whether the attempt to exercise it was before or after the debt had been barred by the statute. Upon this feature of the case one other authority, relied upon by the plaintiff, remains to be considered. That is *Holly* v. *Gibbons* (176 N. Y. 520). That was a case involving the right of an executor to acknowledge and keep in force a valid debt against his testator's estate as distinguished from an

attempt to revive an indebtedness which has been barred by the statute. That case also presented a situation which has no analogy to the facts of the case at bar. An executor has the right to acknowledge and pay all honest and subsisting claims against his testator to the full extent of the latter's estate. For that purpose the executor is a trustee for all concerned, with all the powers required by his duties. It is different, however, as to a debt already barred by the statute. In such a case his only duty is to interpose the statutory defense, because no right of action remains. (*Butler* v. *Johnson*, 111 N. Y. 204.) In the *Holly* case the executor acknowledged a valid and subsisting debt and made payments thereon from time to time. This was strictly within his power. Later it transpired that the personal property would not suffice to pay the debt, and the creditor commenced an action, within the time limited by law after the executor's last payment, to have the testator's real estate sold under a power of sale contained in the will. The right to maintain the action was upheld in the courts below, but the judgment was reversed in this court on account of the plaintiff's failure to bring in a necessary party defendant.

In view of the repeated and unequivocal declarations of this court that a part payment, whether made before or after a debt is barred by the statute, does not revive the contract unless made by the debtor himself or by some one having authority to make a new promise for the residue, I deem it unnecessary to refer to the cases in other states, for that could not be satisfactorily done without extending this discussion beyond reasonable limits. It is sufficient to say that the great weight of authority in other states supports the rule adopted by this court.

A further point relied upon by the plaintiff remains to be noticed. It is urged that the defendant ratified the act of the plaintiff in applying upon the note the proceeds of the stock and bonds sold, and that this is the equivalent of a new promise by the defendant. That claim is based upon the letter mailed by the plaintiff to the defendant, notifying the latter that the

securities had been sold, and upon the defendant's neglect or failure to object to that procedure.    If the conclusion is well founded that the written authority accompanying the note gave to the plaintiff no greater right than it had under the law, except as to the details of sale, it is obvious that the defendant was not called upon to protest or object.    His creditor was simply doing what it had the right to do, and that was to sell the securities to satisfy the debt.    This was a right which could not be affected by, nor affect, the Statute of Limitations.    (*Hulbert* v. *Clark*, 128 N. Y. 295; *House* v. *Carr*, 185 id. 453.)    The plaintiff's silence in these circumstances, far from being evidence of ratification, is quite consistent with his determination to stand upon his legal rights.

These views lead to the conclusion that the transaction of 1901 was not such a payment as to arrest the running of the Statute of Limitations by virtue of a new promise made by the defendant, but was simply the plaintiff's exercise of the right to sell pledged collateral and apply its proceeds in reduction of the debt.

Some of my brethren who dissent from the foregoing views have receded from the position that the defendant, by his silence after receiving notice of the sale of the Eagle Warehouse Company stock and of the application of its proceeds upon his note, ratified the acts of the plaintiff so as to raise the legal implication of a new promise which extended the period of limitation.    But they have now taken a position which, in my judgment, is even less tenable than the one which they have abandoned.    The latest argument is that although the plaintiff's right of action upon the note, as a note, is barred by the Statute of Limitations, yet a right of action survives upon the defendant's special written promise to pay any deficiency which might exist after a sale of the pledged collaterals and the application of the proceeds of such sale upon the note.    As I understand it this conclusion is based upon the premise that the deficiency did not become due until the amount thereof became fixed and that the statute did not begin to run until that time.    This is a novel con-

tention, but I think it is unsound in principle. The effort to rescue the plaintiff's claim from the bar of the statute has suggested an expedient which may be designed to promote justice in this particular case, but which is antagonistic to a general rule of law established by centuries of usage. At common law a right of action which had once accrued was immortal. Experience long ago demonstrated the unwisdom of such a rule. Practical considerations applied to the administration of justice demanded that legal disputes should be settled while evidence was readily obtainable. Since the twelfth century actions concerning real estate have been regulated by statutes of limitation and since the sixteenth century choses in action have been similarly restricted. Under our statute the period of limitation as applied to promissory notes has been fixed at six years, and when such notes are payable on demand the statutory declaration has been held to mean that an action must be commenced within six years of the date of the instrument. (*Herrick* v. *Woolverton*, 41 N. Y. 581; *Wheeler* v. *Warner*, 47 N. Y. 519; *McMullen* v. *Rafferty*, 89 N. Y. 456; *Mills* v. *Davis*, 113 N. Y. 243.) In the case at bar this period of limitation was extended for six years from the last payment made by the defendant, which was on August 24th, 1899. This action was not commenced until September 12th, 1906, or eleven months after the period of limitation had expired, and at that time no right of action survived upon the note. The complaint discloses that this is an action upon the note, and nothing else. The record is barren of any hint or suggestion that the plaintiff's right of action is founded upon a special promise which survived the period of limitation upon the note, because no right of action accrued upon the special promise until the amount of the deficiency had been ascertained by computation. Neither at the trial of this action, nor upon the argument of the several appeals to the Appellate Division and to this court, have counsel for the plaintiff tendered any such argument, and it has remained for judicial industry to make the discovery that, although no action can

be maintained upon the note, the defendant may yet be, cast in judgment upon his special promise to pay the deficiency. The question which is now for the first time injected into this controversy is whether there is here a special or independent promise by the defendant which can be separated from his general promise to pay the whole debt.    When the defendant executed and delivered the note in suit, he promised to pay the whole debt represented by it, and he promised to pay ·it on demand.    The Statute of Limitations, therefore, began to run at once as to the whole debt.    It was extended from time to time by the payments made, but not beyond six years from the date of the last payment.    When the defendant made the note he also pledged certain collateral as security for its payment and promised in writing to pay any deficiency which might remain if resort should be had to the collateral and that should prove insufficient.    But does the fact that the promise was in writing invest it with the characteristics of a separate and independent undertaking ?   In making this express written promise the defendant did only what the law would have implied from the transaction if he had remained silent.    His promise was to pay the debt, and that he could do in either of two ways.   He could pay the whole in money and demand the return of his pledged collateral ; or he could submit to a sale of his securities at the risk of having a deficiency to pay.    In either event, however, he would only be paying what he had promised to pay in the beginning.    When a bond is given for the payment of a specified sum of money, accompanied by a mortgage of even date upon real estate, the bond represents primarily the debtor's personal undertaking while the mortgage represents the land pledged to secure the payment of the debt.    A suit may be commenced in the first instance, upon either the bond or the mortgage, but not upon both concurrently.    Usually the mortgage is first foreclosed and the decree of sale provides for the payment of any deficiency which may arise.    Such a deficiency is never ascertainable until the land has been sold, and yet I think it would startle the profession to have it judi-

cially announced that the promise of a mortgagor to pay such a deficiency constitutes a new engagement which fixes a different period of limitation from that which attaches to the whole debt. To my mind the illustration just cited marks clearly the distinction between a definite promise to pay an exact sum at a stated time, and a conditional undertaking to pay an uncertain amount upon the happening of a contingent event. In the one case the promise is precise and fixed but the method of payment may depend upon circumstances which arise after the promise has been made and the Statute of Limitations has begun to run; in the other case the promise is to pay upon the happening of an ultimate possibility which may or may not materialize and, therefore, no liability arises until it is fixed by subsequent events, and the Statute of Limitations does not begin to run until the contingency has been resolved into certainty.

In the light of this distinction I have no criticism to make upon the authorities cited by my brother Hiscock, except that they have no application to the case at bar. They are all characterized by contingencies or alternatives which contemplate no original undertaking or liability, and under which the conditional promises depended upon the mere possibility of future events. A brief analysis of these cases will show the difference between them and the case at bar. In *Tebo* v. *Robinson* (100 N. Y. 27) the defendant promised to pay a certain sum of money "the moment I am able to pay it." That was a promise conditioned upon the promisor's ability to pay; and his ability to pay was the principal question of fact litigated. The defense was the Statute of Limitations. That raised the subsidiary question of fact whether he was able to pay within six years before the action was brought, for it was properly assumed that no cause of action arose until the promisor was able to pay. The case of *Goodell* v. *Sanford* (31 Mont. 175), stripped of many confusing details not essential to the point here involved, dealt with a sale of lands by an executrix to a syndicate acting through a trustee. It was part of the arrangement that upon the failure of the

grantee to pay the stipulated installments of purchase price
as they became due, all his rights under the conveyance
should be forfeited together with all payments made to the
grantor, and that the grantee should reconvey the premises
*unless at the option of the grantor* the premises should
be sold at public auction, in which event the proceeds should
be applied upon the amount due from the grantee, and for
the balance remaining due the grantor should have her
action.    This was the situation upon which the court decided
that, for the purpose of determining when the Statute of
Limitations began to run, the grantee's right of action accrued
when the property was sold under the declaration of trust.
Had there been no exercise of the option reserved to the
grantor, the liability of the grantee would have remained fixed
by the terms of the deed of conveyance.    But the exercise of
the option created a new right of action, the extent of which
depended wholly upon the amount which might remain unpaid
after the public sale of the land and the application of the
proceeds to the payment of the original purchase price.    Pre-
cisely the same question was decided in *Preston* v. *Fitch*
(137 N. Y. 41), although it arose upon different facts.    The
assignee of a surviving partner brought suit against the estate
of a deceased partner to compel contribution toward disburse-
ments, costs and expenses incurred by the survivor in the care
of real estate, payment of interest on prior mortgages, costs of
foreclosure, etc., as to which it was simply held that no cause
of action arose in favor of the survivor until it was ascer-
tained how much more than his share he had properly
advanced for the joint account.    In *Chaplin* v. *Wilkinson*
(62 Barb. 46) the plaintiff had an account for $200 against
F.    That account Chaplin assigned to Wilkinson upon an
agreement that any sum which should be allowed to Wilkin-
son by way of set-off or counterclaim in a suit about to be
commenced against him by F. should be paid to Chaplin.    In
that suit judgment was rendered allowing Wilkinson the sum
of $137 upon the assigned claim, and it was held that the
Statute of Limitations did not begin to run until the entry of

that judgment. That decision was obviously correct because, until the whole or a part of the assigned claim had been allowed to Wilkinson in the form of a judgment in the suit of F., no cause of action arose in favor of Chaplin upon Wilkinson's conditional promise. Finally the case of *United States* v. *Louisiana* (123 U. S. 32) is cited in support of the argument that the Statute of Limitations does not preclude the maintenance of the action at bar. What was that case? The state sued the Federal government under an act of Congress which provided for the sale of certain swamp land within the borders of the state. The statute required the secretary of the interior to identify the lands, but this was not done. What was decided as regards the Statute of Limitations is best stated in a brief quotation from the opinion of Mr. Justice FIELD : " By the act of 1855, which provided for the payment to the State of moneys received by the United States on the sales of swamp lands within her limits, the payment was made to depend upon proof of the sales by the authorized agent of the State before the Commissioner of the General Land Office. No such proof was ever made or offered, and, therefore, until in some other equally convincing mode the swampy character of the lands sold was established to the satisfaction of the Commissioner, *no definite ascertainment of the amount due to the State was had, so as to constitute a ground of action for its recovery in the Court of Claims."* (p. 37.) Quite different is the case at bar, for here the defendant's promise was definite and unequivocal, covering the whole debt, dependent upon no condition or contingency which might relieve him from it, and embracing nothing that the law would not have implied if he had not reduced it to writing. If judicial construction can metamorphose such an indivisible transaction into two or more separate and distinct parts, governed by as many different periods of limitation, we may as well abolish the statute, for it will no longer be the shield of him who is sued, but the sword of him who sues.

I recommend that the judgment herein should be reversed and a new trial ordered, with costs to abide the event.

Hiscock, J. (dissenting). I am unable to concur in the opinion and conclusions of Judge Werner.

The action was brought to recover the balance or deficiency remaining unpaid on a collateral note executed by the appellant and owned by the respondent for the sum of $68,000 and interest, dated February 12, 1894, and payable on demand, and whereby and wherewith there were deposited certain collaterals with power of sale of the latter, and wherein were contained certain provisions for the payment of any deficiency remaining after the application of the proceeds of collaterals.

From time to time, between March 7, 1894, and October 3, 1895, the appellant took up various pieces of his collateral by the payment of various sums of money which were applied as credits on his notes. There is no question that these transactions amounted to voluntary payments which prevented the operation of the Statute of Limitations. August 24, 1899, the appellant wrote to the respondent a letter dated that day and reading as follows:

"Brooklyn, N. Y., *Aug.* 24, 1899.

"The Brooklyn Bank :

"Please deliver to bearer 75 shares Knickerbocker Steamboat Company now held as collateral security in my loan of Feby. 12th, 1894, and accept in place thereof Five hundred and sixty-two 50 Dollars ($562.50)

"Respectfully,

"F. A. BARNABY."

The respondent complied with the request in this letter contained and credited the money received in place of the collateral which was delivered up as a payment on said note, and this is one of the disputed transactions relied on by the respondent as a partial payment withdrawing the note from the operation of the statute up to that time. On or about December 11, 1901, in accordance with the terms of the note, respondent sold at private sale 25 shares of Eagle Warehouse Company stock, being part of the collateral security deposited by and with the note aforesaid, and received on said sale the

sum of $1,775, which it credited on said note. It notified appellant of said sale and credit on said debt by letter, to which he made no response. This transaction happened less than six years before the commencement of the action and is relied on by the respondent as a partial payment preventing the operation of the statute down to the date of the sale and application as aforesaid.

The Statute of Limitations has been invoked as a defense to this action and the effectiveness of this defense has been tested by two transactions occurring, respectively, August 24, 1899, and December 10, 1901, whereby the proceeds of certain collaterals were applied as credits on said note. It has been assumed that if those transactions amounted to voluntary partial payments by the debtor on his notes, they stayed or avoided the operation of the statute down to the last date which was within six years before the commencement of the suit, and on the other hand, that if they did not amount to such payments then respondent's cause of action had become barred when this action was brought. While the first alternative embodied in this assumption is doubtless correct, the second one in my opinion is not so.

We are all agreed that the first transaction involved, and which has been fully set forth in the statement of facts, amounted to a partial payment; that when the debtor sent to the creditor a sum of money and asked that it be accepted in lieu of a piece of collateral security, he must have expected that this money would not be kept in a separate account as security, but that it would be credited as a payment on the note and, therefore, that here was a voluntary partial payment by the debtor which acknowledged a remaining balance of indebtedness and wherefrom could be inferred a promise to pay such indebtedness which within all applicable principles stayed the operation of the statute to that date.

The second transaction presents different considerations. Under the powers conferred by the note respondent sold some of appellant's collateral applying the proceeds on his note and notifying him of what had been done. It is urged that appel-

lant's silence for many years after notification and knowledge of what had been done, amounted to an acquiescence in and ratification of the sale of the securities and the application of the proceeds to the payment of his note and that, therefore, here also was what amounted to a voluntary partial payment which acknowledged a remaining indebtedness still to be paid and from which could be inferred a promise to pay such indebtedness and which, therefore, was effective to prevent the running of the statute. It is urged on the other hand, that the authority which permitted the sale of the security and the application of the proceeds thereof to the note, did not include any power to acknowledge the remainder of indebtedness or to promise to pay such remainder, and furthermore that the creditor having a perfect right to sell the security and apply the proceeds, appellant was not called on to and could not object to what had been done, and that, therefore, there was no element of acquiescence or ratification in his silence.

I shall assume for the purpose of this discussion that the latter contention is the correct one, and that under all of the circumstances of this case the sale by respondent of appellant's securities and the application of the proceeds thereof to his note with notice to him did not amount to a partial payment sufficient to stay the running of the statute down to that date within the principles enunciated in the cases of *Crow* v. *Gleason* (141 N. Y. 489); *Smith* v. *Ryan* (66 N. Y. 352); *Harper* v. *Fairley* (53 N. Y. 442).

This, however, as intimated, does not seem to me to cast the decision of this appeal in appellant's favor.

As already stated, from time to time, during a period of several years, the debtor had made payments to his creditor in consideration of which various pieces of his security were surrendered back to him and the sums accepted in place thereof credited as payments on the note. I think we may assume from the findings and evidence and from the statements in the briefs that with the sale of the Eagle Warehouse Company stock on the occasion in question all of appellant's collateral of any value had been released or exhausted. After

the application of the proceeds of this last piece of security there remained unpaid an undisputed balance and deficiency amounting at the time of the trial, with interest, to $24,815.77, for the recovery of which this action was brought. If the sale of the collateral and the application of its proceeds had amounted to a voluntary act and payment by the defendant, there would be inferred an acknowledgment of and promise to pay this deficiency. I have assumed, however, that this did not arise. But in the note itself are specific provisions which take the place of such promise. After enumerating the securities pledged for the payment of the note, the latter reads as follows: "Which (I) hereby authorize said bank or its President or Cashier, to sell * * * in case of the non-performance of this promise, applying the net pro-ceeds to the payment of this note, including interest, and accounting to        for the surplus, if any. In case of defi-ciency (I) promise to pay to said Bank the amount thereof forthwith after such sale, with legal interest." Thus we find an explicit promise to pay the deficiency remaining unpaid on the note after the collaterals had been exhausted. The bank, at a time when the note was not barred by the statute, although past due, sold its remaining piece of collateral and applied the proceeds, and there remained a deficiency. No question was raised of its right to do just as it did do with reference to all of the collaterals which, with the exception of this piece, were taken up by the debtor, and no question was raised about the amount of the deficiency after the application thereof, and I am unable to see how any question can be raised concerning the applicability of this promise to pay the deficiency which remained. This promise was conditioned on and measured by the deficiency which might arise or exist after the disposi-tion and sale of the collaterals. It then for the first time became operative and effective. It took the place of the promise to pay the balance which might have been inferred at that date in case of a voluntary payment, and it was only then that the Statute of Limitations commenced to run, and the bar of this statute had not accrued when the action was

commenced. (*Goodell* v. *Sanford,* 31 Mont. 163; *Tebo* v. *Robinson,* 100 N. Y. 27; *Preston* v. *Fitch,* 137 N. Y. 41; *Chaplin* v. *Wilkinson,* 62 Barb. 46; *United States* v. *Louisiana,* 123 U. S. 32.)

It seems to me, therefore, that this disposes of this appeal and leads to an affirmance of the judgment.

CULLEN, Ch. J., VANN and WILLARD BARTLETT, JJ., concur with WERNER, J.; GRAY and CHASE, JJ., concur with HISCOCK, J.

Judgment reversed, etc.