ADOLF INNONCENTE *vs.* SANTE J. GUISTI *et ux.*

JULY 26, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This is an action of assumpsit to recover a deficiency which was determined by the application of the proceeds of a sale of real estate under a power of sale in a mortgage. Plaintiff's declaration is in two counts, the first on the promissory note secured by the mortgage, and the second on the common counts. The action was tried in the superior court before a justice sitting without a jury and resulted in a decision for the plaintiff on the common counts. To such decision defendants duly excepted and have brought the case here on their bill of exceptions.

The following facts are undisputed: On January 6, 1933, defendants made and delivered to plaintiff their promissory note in the sum of $3500, payable one year after date to him or order. On that date they executed and delivered to him, to secure payment of that note, a mortgage on their real estate situated in Pawtucket, Rhode Island. No payment of principal or interest was ever made on the note. On June 30,

1938, the plaintiff foreclosed the mortgage, sold defendants' real estate at public sale for $1000, and applied the proceeds of the sale in diminution of the amount then due on the note. On January 16, 1944, plaintiff brought his present action for the deficiency thus established on June 30, 1938 by such sale.

Defendants contend that the action is barred by the statute of limitations, because it was not brought within six years of the maturity of the note. They also contend that the note is usurious and that the trial justice clearly erred in not so finding. We shall now consider such contention before discussing further defendants' first contention.

The evidence relating to the indebtedness of the defendants to the plaintiff and to the making of the mortgage and note in the sum of $3500 on January 6, 1933 is sharply conflicting. It appears that on June 23, 1927, plaintiff had loaned the defendant Sante J. Guisti, who is his brother-in-law, the sum of $2000. No payment was ever made on the principal of this loan, although Guisti testified that he had paid some interest, but he could not either place the time or fix the amount of such payments.

Plaintiff testified that he had also loaned his brother-in-law at an earlier time $1000; that he had at times paid taxes on defendants' real estate and had made other advances of money to Guisti, and that he had never been repaid. Neither loan was evidenced by any note or other memorandum in writing. Plaintiff testified further that he was requested by the defendants to come to their home on January 6, 1933; that he went there; that their attorney was there; and that they admitted they owed him money and that they, themselves, fixed the total sum of $3500, for which they gave him their note secured by a mortgage on their real estate in Pawtucket.

Defendants did not deny that they had called him to their home and given him such note, but they explained that it was made for $3500 for a special reason. Defendant Sante J. Guisti testified that it was understood between them and

plaintiff that, in the event it became necessary to foreclose the mortgage, plaintiff was to give them a credit of $1500 on the note. He further testified that the reason he made the mortgage for $3500 was that "due to the depression things were so bad I thought I was going to lose everything. I thought my creditors were going to jump on me." His wife testified that they never admitted to plaintiff that they owed him $3500. She also testified that the attorney, whose name appears upon the mortgage as the notary public before whom she and her husband acknowledged the mortgage on January 6, 1933, was never in her house. That testimony was flatly contradicted by the attorney. He testified that he had been retained by the defendants to draw the mortgage and note; that, in their home on January 6, 1933, in his presence and hearing, they admitted to the plaintiff that they owed him $3500; and that they, then and there, signed the note for such amount and also signed and acknowledged the mortgage as security for the payment of the note.

The defendants' evidence that they actually borrowed only $1500 from the plaintiff was not credited by the trial justice. On the contrary, he believed the plaintiff's testimony, that the sum of $3500 was defendants' own calculation of the amount in which they were indebted to plaintiff for the loans and advances which he had previously made to them. After a careful perusal of the transcript we are of the opinion that the trial justice was not clearly wrong in finding that the defendants had failed to prove, by a fair preponderance of the evidence, their plea of usury.

We now come to defendants' second point. Is the plaintiff's action barred by the statute of limitations? It is admitted that the action on the note is barred, if the running of the statute was not interrupted on June 30, 1938 by the application of the proceeds of the foreclosure sale to the note. Plaintiff contends that such application was, in law, a payment by the defendants' agent and, therefore, tolled the statute on that date. Defendants contend that it was not a payment which bound them, since it was neither made by

them nor intended by them as an acknowledgment of the note, and therefore could not interrupt the running of the statute.

The plaintiff's contention is founded on the proposition that a power of sale in a mortgage constitutes the mortgagee the agent of the mortgagor, not merely to sell the mortgaged real estate for the benefit of the mortgagee but also to apply the proceeds of the sale in diminution of the mortgagor's debt. There is no authority in this state for or against such a proposition. Elsewhere in similar cases involving a mortgage, deed of trust, or other collateral security, the authorities are divided. Among the cases supporting plaintiff's contention are *Buffinton* v. *Chase,* 152 Mass. 534; *Bank* v. *King,* 164 N. C. 303; *Sornberger* v. *Lee,* 14 Neb. 193. Some which are to the contrary are *Brooklyn Bank* v. *Barnaby,* 197 N. Y. 210; *Holmquist* v. *Gilbert,* 41 Colo. 113; *Zaks* v. *Elliott,* 106 F. (2d) 425; *Hoffman* v. *Sheahin,* 121F. (2d) 861.

Apart from authority, and purely upon principle, it would seem that the mortgagee is the agent of the mortgagor, *at least while the mortgage debt is still actionable and before the statute has run,* not only to sell the mortgaged real estate but also to apply the proceeds of the sale to the payment of the debt in whole or in part, as the funds realized by the sale will permit. The power to sell and the duty to apply the proceeds of the sale are inseparable and spring from the will of the mortgagor as evidenced by the mortgage itself. It is as if the mortgagor had expressly said: "I authorize you, in the event of my default, to collect the money I owe you by selling my real estate, provided, however, that you shall credit me, at the time of the sale, with a payment on my debt to you as if I had actually paid you myself." This is a reasonable construction of the mortgagor's contract with the mortgagee and takes nothing away from the mortgagor. If the statute had already run at the time of the sale, the case might be different, because then the mortgagor might be deprived of something, namely, his freedom from action on

the barred debt. In the instant case the debt was not barred at the time of the sale but was still actionable.

In some of the jurisdictions, which hold that the application of the proceeds of sale is not such a payment on the part of the debtor as will interrupt the running or remove the bar of the statute, it has been expressly decided that the fact that the sale was made before the statutory period had expired makes no difference. *Brooklyn Bank* v. *Barnaby, supra,* and *Hoffman* v. *Sheahin, supra.* We have examined both of those cases, not only because the *Hoffman* case seems to rely on the *Brooklyn Bank* case on this point, but also because the latter case itself seems to follow an earlier New York case, *Shoemaker* v. *Benedict,* 11 N. Y. 176, which, in our opinion, did not present the same factual situation that is before us in the case at bar.

In the *Brooklyn Bank* case the New York court of appeals recognized that the *Shoemaker* case, and cases following it, did not present facts precisely like those in the case before them, but, nevertheless, the court felt that those cases were "so identical as to be controlling under the rule of *stare decisis.*" We have examined those cases and almost all of them are cases where a joint debtor made a payment on the joint debt, while the statute of limitations was still running, and it was contended that such payment was binding on his codebtor so as to interrupt the running of the statute as to both.

The fundamental question at issue in those cases was, as stated in *Shoemaker* v. *Benedict, supra,* "whether the joint contract creates an agency in one of several joint debtors to continue a debt or renew a debt already barred against all, and prevent the statute of limitations from attaching by a new promise, express or implied; or in other words, whether such joint debtor is authorized in virtue of his relation to the parties, to make such new contract as shall bind them all." And the court, following *Van Keuren* v. *Parmelee,* 2 N. Y. 523, held that there was no such agency.

It was argued, however, in the *Shoemaker* case that since the payment was made before the statute had run, the case differed in that respect from the *Van Keuren* case, but the court rejected that argument and said: "The decision of Van Keuren v. Parmelee, is upon the ground that no agency ever existed, not that an agency once existing had been revoked." Of course where there was never any agency to begin with it would not make any difference when the payment was made. It would be equally ineffectual before or after the statute had run. As we read the *Van Keuren* and *Shoemaker* cases they hold that one joint debtor is not the agent of his codebtor, either by acknowledgment or payment on account, to continue a debt, or to renew a debt already barred.

We find no fault with such a view where, as in New York, it is settled that the act of one joint debtor does not bind his codebtor after the statute of limitations has begun to run, but we do not see how the decisions in such cases are binding in a case where a pledgee sells securities in accordance with his contract of pledge with the pledgor and applies the proceeds of the sale to the debt before the statute has run. And certainly we cannot see that they have any binding force in the case of a sale under a *power of sale in a mortgage,* as in the instant case.

However, the *Brooklyn Bank* case has been cited as authority in two federal courts, which expressly held that the application of the proceeds, of the sale of real estate under a deed of trust in one case, and the sale of collateral security in the other, even before the statute had run on the debt, did not toll the statute. *Hoffman* v. *Sheahin, supra; Zaks* v. *Elliott, supra.* In the *Hoffman* case the court said that though there was authority contrary to the *Brooklyn Bank* case, it felt that the better rule and the one more widely accepted was the one followed in that case.

On the other hand, we think it better, in the case before us, to follow the rule that has been adopted by Massachusetts, where the court has construed the contract between

the debtor and his creditor as authorizing the latter to act as the agent of the former in making a payment on the debt by applying thereto the proceeds of the sale of the pledged security. *Buffinton* v. *Chase, supra.* See also *Credit Service* v. *Barker,* 308 Mass. 476 and *Vermont Peoples National Bank* v. *Parker,* 269 Mass. 387.

In the *Buffinton* case the debtor gave the creditor certain promissory notes of another as collateral security. Before the statute of limitations had run on the debt the creditor reduced the collateral to money and applied it on the debt. After the statutory period of limitations had expired he brought his action for the unpaid balance. The debtor pleaded the statute of limitations in bar of the action. The court rejected such defense and held that the money which was realized on the notes and applied to the debt was a payment by the debtor as of the date of such application and that from such payment an acknowledgment of the debt was implied. In its opinion the court adverted to the New York rule and said that it was contrary to the current of Massachusetts authorities.

On principle and authority, therefore, we are of the opinion that, in the case at bar, the application of the proceeds of the sale of the mortgaged real estate on June 30, 1938, was a payment by the debtors through their agent and was an acknowledgment of the existence of the debt which raised an implied promise at that time to pay the balance. On this view, when the action was brought on January 16, 1944, the statute had not run on either the note or on the common count for money had and received.

In connection with the choice which we have made here of the line of authority to follow in the determination of the immediate question before us, it may be pertinent to observe that the law in this state with reference to joint debtors, unlike that in New York, is that a payment by one joint debtor prevents the running of the statute as to his codebtors as well as himself, whether they authorized such payment or not. This view was expressly adhered to by this court many

years ago in the face of a then growing body of American decisions to the contrary. *Woonsocket Institution for Savings* v. *Ballou,* 16 R. I. 351, and cases cited therein.

Viewed solely in the light of the policy of the law of this state as thus decided, it seems to us that there is far greater reason for treating a mortgagee as the agent of his mortgagor to toll the running of the statute of limitations on the debt than there is for treating a joint debtor as the agent of his codebtor for the same purpose. In the case of the mortgagee there is no question as to the source of his authority to sell and apply the proceeds of the sale. It is the express act of the mortgagor. The only question is, should that agency be deemed to continue beyond the maturity of the note so as to interrupt the running of the statute on the mortgage debt. On reasons above given, which we think are sufficient, we have answered that question in the affirmative.

We are of the opinion, therefore, that an action on the common counts was not barred, for the same reason that an action on the note was not barred. Hence, there was no error in the trial justice's decision in favor of the plaintiff on the common counts, regardless of the ground on which he based it.

Defendants' exceptions are overruled, and the case is remitted to the superior court for entry of judgment on the decision.

Moss, J., dissenting. I am unable to concur with the opinion of the court in the matter of the suspension of the operation of the statute of limitations by the plaintiff's application, on the mortgage note, of the net proceeds of the foreclosure sale of the mortgaged property, as a partial payment of the note. I am convinced that according to sound reasoning and the greater weight of authority, such a crediting does not show a recognition by the maker of the validity of the note as an obligation binding on him *at that time,* so as to toll the operation of the statute.

The following cases are typical of many which lay down and apply the rule which in my judgment is the sound one.

*Thomas* v. *Brewer,* 55 Ia. 227 (1880); *Westinghouse Co.* v. *Boyle,* 126 Mich. 677 (1901); *Union Stockyards National Bank* v. *Maika,* 16 Wyo. 141 (1907); and *Howard* v. *Pritchett,* 207 Ala. 415 (1922).

In the first of these cases it is held that a payment realized on a promissory note, by a proceeding *in rem* against property upon a mortgage of it given by the maker to secure the payment of that note, is not such a payment as implies an acknowledgment by him of liability on the note so as to prevent him from setting up the statute of limitations as a defense to an action at law on the note.

In *Westinghouse Co.* v. *Boyle, supra,* the plaintiff was a creditor of the defendant, because of the sale by the former to the latter of a certain machine, and it held a chattel mortgage of the machine to secure the unpaid balance on the sale price. The defendant being in default as to the payment of a considerable part of the sale price, the plaintiff, upon a foreclosure of the mortgage, sold the machine for a sum considerably less than that unpaid balance and credited on that balance the net sum realized from the sale.

The plaintiff contended that, in making the foreclosure sale and crediting upon the note the net amount realized thereat, it was acting as the agent of the defendant under the mortgage and that therefore the operation of the statute of limitations was interrupted. But in that case the court rejected that contention and held that the action was barred by the statute. Earlier Michigan cases are cited to the same effect.

In its opinion in *Union Stockyards National Bank* v. *Maika, supra,* the Wyoming supreme court says, at page 150: "Wherever the question has arisen in a foreclosure sale under a power contained in the mortgage the courts, with the exception of one case in Missouri, which has since been repudiated, have proceeded upon the theory that the act of the creditor in such case represents no voluntary affirmative act on the part of the debtor from which a promise to pay could be reasonably implied."

After an examination of these and numerous other authorities on the subject, including the cases referred to in the majority opinion, I am convinced that the opinions above discussed are in accord with the nature of the relationship between a mortgagor and mortgagee and the meaning of the power of sale in the mortgage, as well as with sound reasoning and the great weight of authority; and that they state the rule which should be followed in the instant case.

It should be kept in mind that the mortgage here contained no covenant to pay the debt; and that, in the majority opinion, the agency of the mortgagee, which is actually coupled with a creditor's interest, has been extended by interpretation beyond the ordinary or necessary limits of the express language used in granting the power of sale.

In the majority opinion the case of *Woonsocket Institution for Savings* v. *Ballou,* 16 R. I. 351, is cited and apparently relied upon. I am convinced that that case deals with a different kind of relationship and is not contrary to the opinions above discussed and that it should be given no weight in deciding the question now before us.

My conclusion is that in the instant case the defendants' exception to the decision, by the trial justice, for the plaintiff should be sustained.

FLYNN, C. J., concurs in the dissenting opinion of Mr. Justice Moss.

*Ralph Rotondo,* for plaintiff.

*John DiLibero,* for defendant.