Irving U. Scott, Plaintiff, *v.* Henry A. Palmer, Defendant.

Supreme Court, Madison County, September 30, 1935.

*Ralph W. France,* for the plaintiff.

*Pratt & Fowler* [*Willard R. Pratt* of counsel], for the defendant.

Personius, J.   The plaintiff sues upon the following instrument:

" $2,000.00                                             *April* 1, 1916.

" On demand I promise to pay I. U. Scott Two thousand dollars ($2,000.00) for value received with interest at 5½ per cent.

                                        " HARRIET P. SCOTT."

The instrument was signed on the back by the defendant, Henry A. Palmer.   He sets up the Statute of Limitations.   The action was commenced February 25, 1935.   Six years prior thereto would be February 25, 1929.   The real question here is whether a payment made June 13, 1929, by the defendant, but with moneys belonging to Harriet P. Scott's estate, stopped the running of the statute as to the defendant.

The relationship of the parties is helpful in understanding and determining the issue. Harriet P. Scott was a sister of the defendant, Henry A. Palmer. Her husband, Giles Scott, is a brother of the plaintiff, Irving U. Scott. In 1916, Harriet P. Scott and the defendant owned a farm known as the Palmer farm, which came to them from their father, William W. Palmer. The defendant had been the administrator of his father's estate. He continued to operate the farm for himself and Mrs. Scott and continued a bank account in the name of the estate.

Harriet P. Scott and her husband, Giles, occupied a farm referred to as the Scott farm formerly owned by the grandfather of Giles and the plaintiff, Irving U. Scott. Giles Scott and his wife contemplated the purchase of the interests of the other heirs, including the plaintiff, Irving U. Scott, in the Scott farm. To effectuate this purchase, Mrs. Scott borrowed from the plaintiff $2,000, represented by the above note. She died December 31, 1918. Her husband and children continued in possession of the Scott farm. No administrator of her estate was appointed.

Being non-negotiable, the defendant did not, by signing the note on the back, become an indorser of the note but he became liable as a maker or guarantor. (*McMullen* v. *Rafferty*, 89 N. Y. 456, 458; *Strong* v. *Strong*, 231 App. Div. 428, 431; *Persky* v. *Bank of America Nat. Assn.*, 261 N. Y. 212, 219.) The Statute of Limitations commenced to run in his favor from the date of the note, namely, April 1, 1916. (*McMullen* v. *Rafferty*, *supra*.)

Several payments are indorsed on the note but only two need be considered, viz.: (1) June 13, 1929, $150, and (2) June 12, 1931, $200. The last payment was made by Giles Scott presumably on behalf of Mrs. Harriet P. Scott's estate. This payment by one obligor did not stop the running of the statute as to the other, that is, as to this defendant. (*State Bank of Binghamton* v. *Mangan*, 240 App. Div. 327, 328.)

The payment of $150 made June 13, 1929, was made by a check payable to I. U. Scott, signed " Henry A. Palmer as Admr. of Estate of W. W. Palmer."

When the plaintiff took this note, he knew that Mrs. Scott and her brother, the defendant, intended that she would pay it from her share in the Palmer farm. Parenthetically, such an understanding between Mrs. Scott and her brother, the defendant, would in no way limit or affect the liability of the defendant to this plaintiff. We strike out the testimony as to the conversation between Mrs. Scott and the defendant in the absence of the plaintiff. It was received subject to being stricken out. But this understanding known to plaintiff bears on the understanding of the parties when

payments were made by defendant subsequent to Mrs. Scott's death. The defendant was managing the Palmer farm, keeping the proceeds in an account in the name of the W. W. Palmer estate. From time to time he divided and distributed the same. Concededly some of the prior payments on this note were from this estate account. The payment in question made June 13, 1929, and a payment on April 1, 1928, were so made. Both checks are in evidence. On several occasions the defendant told the plaintiff that he would make payments " as soon as there were any funds available in the Harriet half of that estate, or income from that estate." The plaintiff so testified. In 1929 a fire occurred on the Palmer farm and no funds were available for distribution. The only payment made thereafter was the one made by Giles Scott personally of $200. At one time there was talk between the plaintiff and the defendant that the latter would endeavor to get a mortgage on the Palmer farm and pay the plaintiff the one-half of the proceeds of such mortgage belonging to Harriet P. Scott or her estate. The defendant never made any payment on the note from his personal funds.

We conclude that the plaintiff knew that the money paid in 1929 belonged to Harriet P. Scott or her estate, and that the defendant had no intention of making any payment with his own personal moneys. Such payment did not stop the running of the Statute of Limitations as against the defendant. A payment to toll the running of the Statute of Limitations must be made under circumstances amounting to an absolute and unqualified acknowledgment· by the debtor, so that a promise to pay the balance may be inferred, and indicate an intent that it shall be so taken by the creditor. (*Brooklyn Bank* v. *Barnaby*, 197 N. Y. 210; *Blair* v. *Lynch*, 105 id. 636, 638; *Adams* v. *Olin*, 140 id. 150, 160; *Crow* v. *Gleason*, 141 id. 489.) The payment was made with Mrs. Scott's moneys; the plaintiff knew it. He knew the defendant intended to pay with Mrs. Scott's moneys and not otherwise; it is immaterial that the defendant drew the check and delivered it. (*Bailey* v. *Corliss*, 51 Vt. 366; *Gray* v. *Pierson*, 7 Ida. 540, 547; 64 P. 233.) In the former case the Vermont statute as to a payment by one joint debtor was in substance the same as the law of this State. One joint debtor furnished money to another with which to make a payment. The other made the payment, informing the creditor of the facts. It was held that the debtor making the payment did so as the agent of the other debtor and that the payment did not toll the statute as to the party making it. In *Gray* v. *Pierson* (*supra*) one of two joint debtors owed the other. The latter directed the former to pay the amount to their creditor, which he

did with his own check. The court held that the statute was not tolled as against the party actually making the payment though it was as to the party who in effect furnished the money.

In *Miller* v. *Talcott* (54 N. Y. 114) the maker was in bankruptcy. An indorser received a dividend. He retained part and paid the balance to the holder. The court said that the payment was not made as an agent; that the fact " that he kept one-half of this sum himself is a material circumstance * * * to show that he was not acting as agent merely." In other words, it held that the indorser made the payment with his own money. The contrary is true here.

In *First Nat. Bank of Utica* v. *Ballou* (49 N. Y. 155), cited by plaintiff, the maker made a payment and took a receipt in the name of the indorser. The indorser saw the receipt and approved or ratified it. The court held that the payment was made by the maker, not as his own payment, but as agent for the indorser and, therefore, tolled the statute as to the indorser. In the present case the payment was made by the defendant as agent for Mrs. Scott from her share in the proceeds of the Palmer farm which the defendant was managing for her. The *Miller* case is authority for the proposition that a payment made by an agent tolls the statute against the principal, not the agent.

Pursuant to section 440-a of the Civil Practice Act, we award a verdict in favor of the defendant of no cause of action.