Shientag, J.
The questions raised on this appeal are: (1) whether there was an acknowledgment or promise in writing signed by the party to be charged therewith sufficient to start anew the running of the Statute of Limitations insofar as it relates to the first cause of action, and (2) whether the Statute of Limitations was tolled as to all the causes of action because of the defendant’s absence from the State.
The first cause of action is that in February, 1940 (incorrectly alleged in the complaint to be July, 1938) the plaintiff (hereafter called “ Curtiss-Wright ”) and the defendant (here *15 after called “ Inter continent ”) jointly owned a certain airplane which the defendant, with the consent of the plaintiff, sold for $31,100; that the defendant thereby became indebted to the plaintiff for one half of the sales price, amounting to $15,550, which the defendant has refused to pay. The second cause of action is for services rendered by the plaintiff to the defendant in July, 1938, at an ag’reed price and reasonable value of $1,500. The third cause of action is for services rendered in November, 1938, amounting to $2,500, and the fourth cause of action is for moneys expended for the use and benefit of the defendant in December, 1942, amounting to $19.17.
This action was begun February 17, 1949, and concededly the six-year Statute of Limitations is applicable unless something has occurred either to start the running of the statute anew or to toll the statute.
We shall first consider the contention of the plaintiff that the running of the statute was started anew by what it claims to be an acknowledgment, or promise to pay, made by the defendant in February, 1943, before the Statute of Limitations became a bar. That claim is based upon certain correspondence between the parties. On January 27, 1943, Curtiss-Wright wrote Intercontinent as follows:
“ At December 31, 1942, our records show accounts receivable from you of $22,502.56 and unapplied balance of advances on uncompleted sales contracts of $17,955.58 as per statements attached.
“ If these statements are correct, will you kindly notify our auditors, Messrs. Lybrand, Ross Bros. & Montgomery, 90 Broad St., New York City, or if incorrect, will you advise them of your exceptions.”
Included among the items listed in this letter as “ Accounts Receivable ” are those covered by the first three causes of action, i.e., $15,550, $2,500 and $1,500.
On February 19, 1943, Intercontinent, by its vice-president, responded to Curtiss-Wright’s letter of inquiry and wrote the following letter to the auditors named (who acted as such for both companies):
“ At the request of Curtiss-Wright Corporation, we wish to inform you of the following outstanding balances between our two companies as of December 31, 1942:
Payable to Curtiss-Wright:
Demonstrator $15,550.00 ”
*16 This is the amount claimed in the first cause of action. Then follow various other numbered invoices under the same heading, “Payable to Curtiss-Wright.” The letter continues:
“ In addition to the above, Curtiss-Wright has billed us with the following amounts, which we did not accept:
Invoice #9660 $1,500.00
1286 2,500.00
“ Curtiss-Wright is in possession of our reasons for rejecting these charges.”
(These are the amounts claimed in the second and third causes of action in the complaint.) The letter concludes with a list of “ Accounts ¡Receivable From Curtiss-Wright.” These accounts are itemized; they are not totalled but in fact they do add up to $116,986.34 and in fact they indicate a balance in favor of Intercontinent amounting to some $98,483.78. Does the correspondence heretofore set forth amount to an acknowledgment or promise to pay the $15,550 claimed by CurtissWright in the first cause of action of its complaint within the meaning of section 59 of the Civil Practice Act? That section provides in part: “ An acknowledgment or promise contained in a writing signed by-the party to be charged thereby is the only competent evidence of a new or continuing contract whereby to take a case out of the operation of the provisions of this article relating to the limitations of time within which an action must be brought ”, This section has an ancient history which it is unnecessary to go into here (1 Wood on Limitations [4th ed.], p. 343 et seq.; Gibbons v. M’Casland, 1 Barn. & Aid. 690, 106 Eng. Reprint 253; Shapley v. Abbott, 42 N. Y. 443, 446; Statute of Frauds Amendment Act called Lord Tenterden’s Act, 9 Geo. IV, ch. 14 [1828], L. 1848, ch. 379, § 90; First Report of the Commissioners on Practice and Pleadings [1848], p. 121; Code Civ. Pro., § 110; L. 1849, ch. 438; Code Civ. Pro., § 395; L. 1876, ch. 448, § 395; Brooklyn Bank v. Barnaby, 197 N. Y. 210; Goodman v. Goodman, 143 Misc. 136).
Without attempting to deal with the long line of cases interpreting this section, it suffices to say that “ Under the act, as at common law, an acknowledgment is effective only if it imports an intention to pay or at least contains nothing inconsistent with an intention to pay, Manchester v. Braedner, 107 N. Y. 346, 14 N. E. 405, 1 Am. St. Rep. 829; Connecticut Trust & Safe Deposit Co. v. Wead, 172 N. Y. 497, 65 N. E. 261, 92 Am. St. Rep. 756.” (Matter of Povill, 105 F. 2d 157, 159, *17 Patterson, J., see, also, Brooklyn Bank v. Barnaby, .197 N. Y. 1110, supra).
The correspondence, with particular emphasis on the letter of Intercontinent, amounts to more than an audit or a copy of book entries as between the parties. While there is contained in the letter of Intercontinent an acknowledgment of an item in the account between the parties amounting to $15,550 in favor of Curtiss-Wright, that acknowledgment, in its setting does not, by any reasonable implication, import “ an intention to pay ” the item; in fact, it is entirely inconsistent with such an intention to pay. The letter of Intercontinent in effect says to Curtiss-Wright: We owe you nothing and we shall pay nothing. The letter shows that Intercontinent was entitled to receive payment from Curtiss-Wright, certainly not that it intended to pay Curtiss-Wright. The entire letter signed by Intercontinent belies any indebtedness at all to Curtiss-Wright; on the contrary, in effect it says: The state of our account shows that you are heavily indebted to us.
Nor may it be said that the correspondence imports a conditional promise on the part of Intercontinent to pay the item of $15,550 to Curtiss-Wright if the latter would pay the much larger item claimed to be due from it to Intercontinent. We do not believe that such a so-called conditional acknowledgment, in the situation here presented, comes within the purview of section 59 of the Civil Practice Act. Moreover, there is nothing in the affidavits to show that any such condition has been met. (1 Wood on Limitations [4th ed.], p. 407 et seq.)
We are not here called upon to decide the effect, on the operation of section 59, of a response certifying to an auditor, at the request of a creditor, to the correctness of a statement of account or of a claimed indebtedness with no setoff or counter indebtedness. Nor is the situation here presented akin to that involved in Nesbit v. Galleher (174 Va. 143) cited by the appellant, in which the acknowledgment of a debt of $1,000 together with a cross claim for $500 was deemed sufficient only to justify a judgment for $1,000 subject to a credit of $500, or a net amount of $500.
In determining what constitutes an acknowledgment within the meaning of section 59 of the Civil Practice Act, there is no occasion for resorting to any subtle or refined distinctions contrary to ordinary business understanding and rules of common sense. The plea of Statute of Limitations is not a technical defense; the Statute of Limitations has a beneficient purpose; it is “ a statute of repose ” (Schmidt v. Merchants *18 Despatch Transp. Co., 270 N. Y. 287, 302); it serves as a barrier to the assertion of stale claims. We hold, therefore, that there was no acknowledgment or promise in writing sufficient to start the running of the Statute of Limitations anew.
We do not, moreover, find any basis for holding that the statute was tolled because of absence of Intercontinent from the State. The affidavit submitted on behalf of Intercontinent is replete with factual information concerning its presence in the State, since 1938, its doing business here, and its having resident in this State since 1938 specifically named officers authorized to accept service of process. All of this is unanswered. The fact that Intercontinent was not authorized until 1944 to do business in this State, pursuant to section 210 of the General Corporation Law, is no criterion. Upon the record before us, there is in truth nothing to be tried with respect to this issue. Accordingly, the order and judgment appealed from should be affirmed, with costs to the respondent.